# EXHIBIT 7

The Agreement

This Agreement is entered into as of April 6, 2023 by and between GridKor, LLC ("GridKor") and MGM Linehaul Inc. ("MGM"), collectively referred to as the "Parties." This agreement is a **legally binding contract** and serves as an expression of the Parties' mutual understanding and intention to transfer appropriate documents in best faith towards a fully executed sale of stock.

Whereas, MGM and GridKor share ownership in the following entities:

PSI Logistics Inc.
Heb Logistics Inc.
Cha Cha Logistics Inc.
Xpress Logistics Inc.
Victoria Logistics Inc.

And whereas, all entities have the same equity breakdown, with GridKor holding a 67% ownership interest and MGM holding a 33% ownership interest;

And whereas, GridKor will obtain 100% ownership in PSI Logistics Inc. while MGM will obtain GridKor's 67% stock interest in Heb Logistics Inc., Cha Cha Logistics Inc., Victoria Logistics Inc., Xpress Logistics., through purchase;

And whereas, Xpress Logistics Inc., is to be considered a 30 day option to be acquired by GridKor for 100% of the entity if MGM can bring the value up to $1,500,000 at the discretion of GridKor. Condition to be met for purchase: Xpress earns an average of $240,000 per month in revenue.

And whereas, the Parties wish to dissolve the old master management agreement, effective after the **complete transfer of ownership interests**, and set forth their understanding regarding the financial considerations and penalties related to this agreement;

Now, therefore, the Parties hereby agree as follows:

**Transfer of Ownership Interests**
Upon the execution of this agreement, GridKor shall retain 100% ownership in PSI Logistics Inc., and MGM shall acquire GridKor's stock in Heb Logistics Inc., Cha Cha Logistics Inc., Xpress Logistics Inc., and Victoria Logistics Inc., resulting in MGM holding 100% ownership interest in these entities.

**Dissolution of Old Master Management Agreement**
The Parties agree to dissolve the old master management agreement, effective upon the complete transfer of ownership interests in the aforementioned entities, according to the terms and conditions set forth in this agreement.

**Financial Considerations**

a) Deposit: MGM shall pay Gridkor a deposit of three-hundred thousand dollars ($300,000) (the "Deposit") on or before April 16, 2023.

b) Additional Payment: MGM shall pay Gridkor an additional amount of $2,200,000 (the "Additional Payment") within 90 days (on or before July 4, 2023) from the date of this agreement for Heb Logistics Inc., Victoria Logistics Inc., and Cha Cha Logistics Inc.

c) Additional Term: GridKor shall decide on whether MGM shall either assign Xpress Logistics Inc., 100% ownership or MGM to pay an additional $1,500,000 to be determined on May 11, 2023.

**Financial Considerations Late Penalties**

In the event MGM fails to make initial payment of $500,000 on or before April 16, 2023, MGM shall be liable to pay Gridkor a penalty of $50,000 per week, effective on April 16, 2023.
In the event MGM fails to make the Additional Payment within the specified 90-day period, MGM shall be liable to pay Gridkor a penalty of $150,000 per month, effective on day 91 (July 5, 2023), with no limit on the cumulative penalty amount. Whereas, if GridKor agrees to take complete ownership of Xpress Logistics, Inc., this penalty shall reduce to $100,000 per month. In which, the penalties are added to the promissory notes in the Exhibits below.

**Legal**

**In the event of any dispute, claim, or controversy arising out of or relating to this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief awarded or granted, its reasonable costs and expenses (including attorneys' fees) incurred in the dispute, claim, or controversy, as well as in any appeal or enforcement of any judgment or award resulting therefrom.**

**Indemnification and Hold Harmless**

MGM Linehaul Inc. ("MGM") agrees to indemnify, defend, and hold harmless GridKor, LLC ("GridKor"), its affiliates, and their respective directors, officers, employees, agents, successors, and assigns (collectively, the "Indemnified Parties") from and against any and all losses, liabilities, damages, claims, demands, actions, causes of action, judgments, settlements, penalties, fines, costs, or expenses (including, without limitation, reasonable attorneys' fees and court costs) (collectively, "Losses") arising out of or resulting from:

   a) any breach by MGM of any representation, warranty, covenant, or obligation under this Agreement;

   b) any negligent, grossly negligent, reckless, or willful misconduct of MGM, its employees, agents, or representatives in connection with the performance of its obligations under this Agreement or the operation or management of the shared entities;

c) any violation by MGM, its employees, agents, or representatives of any applicable federal, state, or local laws, regulations, or ordinances; or

d) any third-party claims related to MGM's ownership or operation of the shared entities.

GridKor shall promptly notify MGM of any claim, demand, or action for which indemnification is sought under this clause, and MGM shall assume and control the defense of such claim, demand, or action at its sole expense, with counsel reasonably satisfactory to GridKor. GridKor may, at its own expense, participate in the defense of any claim, demand, or action with counsel of its choice.

MGM shall not enter into any settlement or compromise of any claim, demand, or action without GridKor's prior written consent, which shall not be unreasonably withheld or delayed, if such settlement or compromise would result in any liability or admission of wrongdoing on the part of GridKor or any of the Indemnified Parties.

This indemnification and hold harmless clause shall survive the termination or expiration of this Agreement and shall continue in full force and effect during the duration of MGM's ownership in the shared entities.

**Driver Management Fulfillment for PSI Logistics and Xpress**

MGM and GridKor agree to collaborate on driver management fulfillment for PSI Logistics and Xpress (collectively, the "Companies") as outlined in this clause.

MGM shall be responsible for recruiting, hiring, and training qualified drivers for the Companies, ensuring that all drivers meet the minimum qualifications, standards, and requirements set forth by the Companies, applicable laws, and industry best practices.

MGM shall provide ongoing support and supervision for the drivers, including but not limited to managing driver schedules, monitoring driver performance, conducting regular performance evaluations, and addressing any driver-related issues or concerns.

GridKor shall oversee and provide guidance on driver management policies and procedures, including but not limited to driver compensation, benefits, and incentive programs, to ensure consistency and alignment with the Companies' strategic goals and objectives.

MGM and GridKor shall maintain open communication and cooperation on all driver management matters, working together to address any challenges or opportunities that arise in the course of driver management fulfillment for the Companies.

MGM and GridKor shall regularly review and update their driver management strategies and tactics, as necessary, to ensure the ongoing success and growth of the Companies, and to maintain the highest level of safety, efficiency, and service quality in the Companies' operations.

MGM and GridKor shall actively work on a new management agreement to be finalized within the 90 day closing period on the aforementioned entities.

**Repairs and Preventive Maintenance**

GridKor and MGM agree to collaborate on repairs and preventive maintenance for the trucks operated by the Companies (PSI Logistics and Xpress) as outlined in this clause.

GridKor shall pay MGM a maintenance fee of $150 per week per truck (the "Maintenance Fee") to cover the cost of preventive maintenance services and essential repairs, including but not limited to oil changes, oil filters, tires, windshield wipers, grease, glow plugs, and any other items necessary to keep the trucks operating efficiently and safely on the road.

MGM shall be responsible for scheduling, performing, and overseeing all preventive maintenance and essential repairs for the trucks, using the Maintenance Fee to cover the associated costs. MGM shall ensure that all maintenance and repairs are performed in accordance with the truck manufacturers' recommendations, applicable laws, and industry best practices.

MGM shall maintain accurate and up-to-date records of all preventive maintenance and essential repairs performed on the trucks, including the dates of service, parts used, and costs incurred. MGM shall provide GridKor with access to these records upon request.

MGM and GridKor shall regularly review the Maintenance Fee and the preventive maintenance and essential repairs program to ensure its effectiveness, making adjustments as necessary to maintain the highest level of safety, efficiency, and service quality in the Companies' operations.

Any additional costs related to repairs and maintenance not covered by the Maintenance Fee shall be subject to separate agreements between GridKor and MGM, or as otherwise set forth in this Agreement.

**Guaranteed Weekly Gross Revenue per Truck**

MGM hereby guarantees to GridKor that during the term of this Agreement, each truck operated by MGM under the shared entities shall generate a minimum gross revenue of $10,000 per week (the "Guaranteed Weekly Gross Revenue").

In the event that any truck fails to achieve the Guaranteed Weekly Gross Revenue during any given week, MGM shall pay GridKor the difference between the actual gross revenue generated by such truck and the Guaranteed Weekly Gross Revenue within ten (10) business days of the end of that week.

MGM's obligation to pay GridKor the difference between the actual gross revenue and the Guaranteed Weekly Gross Revenue for any truck that fails to meet the guarantee shall be in

addition to any other obligations MGM has under this Agreement, including but not limited to the payment of the deposit, additional consideration, and any penalties.

This guarantee shall apply to each truck operated by MGM under the shared entities for the entire duration of this Agreement, unless otherwise agreed to in writing by both parties.

**Personal Guarantee**

In consideration of GridKor entering into this Agreement with MGM, the undersigned individual(s) (the "Guarantor(s)") hereby unconditionally and irrevocably guarantee(s) the full, prompt, and complete performance by MGM of all its present and future obligations, financial or otherwise, arising under this Agreement, including but not limited to the payment of the deposit, additional consideration, and any penalties as set forth herein, as well as the payment of any other amounts owed by MGM to GridKor (collectively, the "Obligations").

The Guarantor(s) further agree(s) to execute a promissory note in favor of GridKor, in a form satisfactory to GridKor, setting forth the specific terms and conditions of the Guarantor(s)' personal guarantee of the Obligations under this Agreement.

The Guarantor(s)' liability under this personal guarantee shall be joint and several, if there are multiple Guarantors, and shall be absolute and unconditional, without regard to the validity, regularity, or enforceability of the Agreement or the promissory note, or any other circumstances that might otherwise constitute a legal or equitable discharge or defense of a guarantor.

This personal guarantee shall be binding upon the Guarantor(s) and their respective heirs, executors, administrators, legal representatives, successors, and assigns, and shall inure to the benefit of GridKor and its successors and assigns.

This personal guarantee shall remain in full force and effect until all the Obligations have been fully and irrevocably satisfied, and GridKor has provided the Guarantor(s) with written confirmation of such satisfaction.

This personal guarantee shall be governed by and construed in accordance with the laws of the state in which the Agreement is executed, without regard to its conflicts of laws principles.

**Exhibits**

This Agreement incorporates by reference the following Exhibits A-G, which are attached hereto and located on the pages immediately following the signature page.

**Entire Agreement**

This Agreement, including any and all Exhibits attached hereto, constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, negotiations, representations, warranties, and understandings, whether oral or written, relating to the subject matter. No modification, amendment, or waiver of any provision of this Agreement shall be effective unless in writing and signed by both parties.

By: _____

Name: _____Michael Bryant_____

Title: _____President_____

Company: _____Gridlor, LLC_____

Date: _____4/6/2023_____

By: _____

Name: _____Oleksandr Maydansryy_____

Title: _____Member_____

Company: _____MGM Line houl inc_____

Date: _____4-6-2023_____

iG    MB    O.M

P.T.    M.M.    WfL

Exhibit A – Truck VINs

**PSI Logistics, Inc.**

| VIN | Make | Year |
|---|---|---|
| 3HSDZAPR5LN814794 | INT'L | 2020 |
| 3HSDZAPR7KN114712 | INT'L | 2019 |
| 3HSDZAPR0LN814766 | INT'L | 2020 |
| 3HSDZAPR1LN814792 | INT'L | 2020 |
| 3HSDZAPR2LN883815 | INT'L | 2020 |
| 3AKJHHDR6PSNH9890 | FREIGHTLINER | 2023 |
| 3AKJHHDR3PSNL2174 | FREIGHTLINER | 2023 |
| 3AKJHHDR1PSNL2173 | FREIGHTLINER | 2023 |
| 3HSDZAPR2KN118697 | INT'L | 2019 |
| 3HSDZAPR4KN125232 | INT'L | 2019 |
| 3AKJHHDR8PSNH9891 | FREIGHTLINER | 2023 |
| 3AKJHHDR5PSNL2175 | FREIGHTLINER | 2023 |
| 3HSDZAPR2KN112110 | INT'L | 2019 |
| 3HSDZAPR5KN124509 | INT'L | 2019 |

If elected to be acquired. The VIN Numbers inside of Xpress are as follows as of April 6, 2023.

**Xpress Logistics Inc.**

| VIN | Make | Year |
|---|---|---|
| 1XKYD49X0NJ125536 | KENWORTH | 2022 |
| 3AKJHHDR1PSNL2173 | FREIGHTLINER | 2023 |
| 4V4NC9EH3JN895153 | VOLVO | 2018 |
| 1XKYD49X2NJ125540 | KENWORTH | 2022 |
| 3HSDZAPR3KN120829 | INT'L | 2019 |
| 3AKJHHDR7LSLR1488 | FREIGHTLINER | 2020 - T |

*if U.M. on*
*M. M. mo wfe*
*P.T.*

<u>Exhibit B – Route Identfication</u>

See Attachment A-1 for both PSI Logistics Inc. and Xpress Logistics Inc. below to be initialed on each page.

<u>Exhibit C – Promissory Note – Igor Gorbach</u>

Date: April 6, 2023

FOR VALUE RECEIVED, the undersigned, Igor Gorbach ("Maker"), hereby unconditionally promises to pay to the order of GridKor, LLC ("Payee"), the principal sum of three million five-hundred thousand dollars ($3,500,000.00), together with any accrued and unpaid interest, in accordance with the terms and conditions set forth in the Agreement dated [Insert Date] between GridKor, LLC and MGM Linehaul Inc. (the "Agreement").

## Payment Terms

Maker agrees to pay the principal sum and any accrued and unpaid interest according to the payment schedule and other terms and conditions specified in the Agreement. All payments shall be made in lawful money of the United States, in immediately available funds, without set-off or counterclaim, and shall be applied first to the payment of accrued and unpaid interest and then to the payment of the **outstanding principal balance**.

## Interest and Penalties

Interest on the unpaid principal balance shall accrue at the rate specified in the Agreement or, if no rate is specified, at a rate of 9% percent per annum, calculated on the basis of a 365-day year for the actual number of days elapsed. Penalties as described in the agreement above will be added into the final number if target dates are missed or violation of non-solicitation.

## Default

If Maker fails to make any payment when due or fails to perform any other obligation under this Promissory Note or the Agreement, Payee may, at its option, declare the entire unpaid principal balance, together with all accrued and unpaid interest, immediately due and payable without presentment, demand, protest, or notice of any kind, all of which are hereby expressly waived.

## Remedies

Upon any default by Maker under this Promissory Note, Payee shall have all rights and remedies available under the Agreement, this Promissory Note, and applicable law, including but not limited to the right to recover any costs, expenses, and reasonable attorneys' fees incurred in connection with the collection or enforcement of this Promissory Note.

## Governing Law

This Promissory Note shall be governed by and construed in accordance with the laws of the state in which the Agreement is executed, without regard to its conflicts of laws principles.

**Severability**

If any provision of this Promissory Note is found to be unenforceable or invalid by a court of competent jurisdiction, the Parties agree that the court should modify such provision to the minimum extent necessary to make it enforceable and valid. If such modification is not possible, the unenforceable or invalid provision shall be deemed severed from this Promissory Note, and the remaining provisions shall continue in full force and effect.

**Shared Responsibility**

In the event that this agreement gets to an executable action in the court of law. All parties signing the promissory note listed in this agreement will share equally in the balance owed.

IN WITNESS WHEREOF, Maker has executed this Promissory Note as of the date first above written.

Igor Gorbach

<u>Exhibit D – Promissory Note – William Collins</u>

Date: April 6, 2023

FOR VALUE RECEIVED, the undersigned, William Collins ("Maker"), hereby unconditionally promises to pay to the order of GridKor, LLC ("Payee"), the principal sum of three million five-hundred thousand dollars ($3,500,000.00), together with any accrued and unpaid interest, in accordance with the terms and conditions set forth in the Agreement dated [Insert Date] between GridKor, LLC and MGM Linehaul Inc. (the "Agreement").

**Payment Terms**

Maker agrees to pay the principal sum and any accrued and unpaid interest according to the payment schedule and other terms and conditions specified in the Agreement. All payments shall be made in lawful money of the United States, in immediately available funds, without set-off or counterclaim, and shall be applied first to the payment of accrued and unpaid interest and then to the payment of the **outstanding principal balance**.

**Interest and Penalties**

Interest on the unpaid principal balance shall accrue at the rate specified in the Agreement or, if no rate is specified, at a rate of 9% percent per annum, calculated on the basis of a 365-day year for the actual number of days elapsed. Penalties as described in the agreement above will be added into the final number if target dates are missed or violation of non-solicitation.

**Default**

If Maker fails to make any payment when due or fails to perform any other obligation under this Promissory Note or the Agreement, Payee may, at its option, declare the entire unpaid principal balance, together with all accrued and unpaid interest, immediately due and payable without presentment, demand, protest, or notice of any kind, all of which are hereby expressly waived.

**Remedies**

Upon any default by Maker under this Promissory Note, Payee shall have all rights and remedies available under the Agreement, this Promissory Note, and applicable law, including but not limited to the right to recover any costs, expenses, and reasonable attorneys' fees incurred in connection with the collection or enforcement of this Promissory Note.

**Governing Law**

This Promissory Note shall be governed by and construed in accordance with the laws of the state in which the Agreement is executed, without regard to its conflicts of laws principles.

**Severability**

If any provision of this Promissory Note is found to be unenforceable or invalid by a court of competent jurisdiction, the Parties agree that the court should modify such provision to the minimum extent necessary to make it enforceable and valid. If such modification is not possible, the unenforceable or invalid provision shall be deemed severed from this Promissory Note, and the remaining provisions shall continue in full force and effect.

**Shared Responsibility**

In the event that this agreement gets to an executable action in the court of law. All parties signing the promissory note listed in this agreement will share equally in the balance owed.

IN WITNESS WHEREOF, Maker has executed this Promissory Note as of the date first above written.

William Collins

<u>Exhibit E – Promissory Note - Oleksandr Maydanskyy</u>

Date: April 6, 2023

FOR VALUE RECEIVED, the undersigned, Oleksandr Maydanskyy ("Maker"), hereby unconditionally promises to pay to the order of GridKor, LLC ("Payee"), the principal sum of three million five-hundred thousand dollars ($3,500,000.00), together with any accrued and unpaid interest, in accordance with the terms and conditions set forth in the Agreement dated [Insert Date] between GridKor, LLC and MGM Linehaul Inc. (the "Agreement").

**Payment Terms**

Maker agrees to pay the principal sum and any accrued and unpaid interest according to the payment schedule and other terms and conditions specified in the Agreement. All payments shall be made in lawful money of the United States, in immediately available funds, without set-off or counterclaim, and shall be applied first to the payment of accrued and unpaid interest and then to the payment of the **outstanding principal balance**.

**Interest and Penalties**

Interest on the unpaid principal balance shall accrue at the rate specified in the Agreement or, if no rate is specified, at a rate of 9% percent per annum, calculated on the basis of a 365-day year for the actual number of days elapsed. Penalties as described in the agreement above will be added into the final number if target dates are missed or violation of non-solicitation.

**Default**

If Maker fails to make any payment when due or fails to perform any other obligation under this Promissory Note or the Agreement, Payee may, at its option, declare the entire unpaid principal balance, together with all accrued and unpaid interest, immediately due and payable without presentment, demand, protest, or notice of any kind, all of which are hereby expressly waived.

**Remedies**

Upon any default by Maker under this Promissory Note, Payee shall have all rights and remedies available under the Agreement, this Promissory Note, and applicable law, including but not limited to the right to recover any costs, expenses, and reasonable attorneys' fees incurred in connection with the collection or enforcement of this Promissory Note.

O. M

**Governing Law**

This Promissory Note shall be governed by and construed in accordance with the laws of the state in which the Agreement is executed, without regard to its conflicts of laws principles.

**Severability**

If any provision of this Promissory Note is found to be unenforceable or invalid by a court of competent jurisdiction, the Parties agree that the court should modify such provision to the minimum extent necessary to make it enforceable and valid. If such modification is not possible, the unenforceable or invalid provision shall be deemed severed from this Promissory Note, and the remaining provisions shall continue in full force and effect.

**Shared Responsibility**

In the event that this agreement gets to an executable action in the court of law. All parties signing the promissory note listed in this agreement will share equally in the balance owed.

IN WITNESS WHEREOF, Maker has executed this Promissory Note as of the date first above written.

Oleksandr Maydanskyy

O. m

<u>Exhibit F – Promissory Note - Milos Mitic</u>

Date: April 6, 2023

FOR VALUE RECEIVED, the undersigned, Milos Mitic ("Maker"), hereby unconditionally promises to pay to the order of GridKor, LLC ("Payee"), the principal sum of three million five-hundred thousand dollars ($3,500,000.00), together with any accrued and unpaid interest, in accordance with the terms and conditions set forth in the Agreement dated [Insert Date] between GridKor, LLC and MGM Linehaul Inc. (the "Agreement").

**Payment Terms**

Maker agrees to pay the principal sum and any accrued and unpaid interest according to the payment schedule and other terms and conditions specified in the Agreement. All payments shall be made in lawful money of the United States, in immediately available funds, without set-off or counterclaim, and shall be applied first to the payment of accrued and unpaid interest and then to the payment of the **outstanding principal balance**.

**Interest and Penalties**

Interest on the unpaid principal balance shall accrue at the rate specified in the Agreement or, if no rate is specified, at a rate of 9% percent per annum, calculated on the basis of a 365-day year for the actual number of days elapsed. Penalties as described in the agreement above will be added into the final number if target dates are missed or violation of non-solicitation.

**Default**

If Maker fails to make any payment when due or fails to perform any other obligation under this Promissory Note or the Agreement, Payee may, at its option, declare the entire unpaid principal balance, together with all accrued and unpaid interest, immediately due and payable without presentment, demand, protest, or notice of any kind, all of which are hereby expressly waived.

**Remedies**

Upon any default by Maker under this Promissory Note, Payee shall have all rights and remedies available under the Agreement, this Promissory Note, and applicable law, including but not limited to the right to recover any costs, expenses, and reasonable attorneys' fees incurred in connection with the collection or enforcement of this Promissory Note.



## Governing Law

This Promissory Note shall be governed by and construed in accordance with the laws of the state in which the Agreement is executed, without regard to its conflicts of laws principles.

## Severability

If any provision of this Promissory Note is found to be unenforceable or invalid by a court of competent jurisdiction, the Parties agree that the court should modify such provision to the minimum extent necessary to make it enforceable and valid. If such modification is not possible, the unenforceable or invalid provision shall be deemed severed from this Promissory Note, and the remaining provisions shall continue in full force and effect.

## Shared Responsibility

In the event that this agreement gets to an executable action in the court of law. All parties signing the promissory note listed in this agreement will share equally in the balance owed.

IN WITNESS WHEREOF, Maker has executed this Promissory Note as of the date first above written.

Milos Mitic

Exhibit G – Promissory Note – Ucha Matcharashvili

Date: April 6, 2023

FOR VALUE RECEIVED, the undersigned, Ucha Matcharashvili ("Maker"), hereby unconditionally promises to pay to the order of GridKor, LLC ("Payee"), the principal sum of three million five-hundred thousand dollars ($3,500,000.00), together with any accrued and unpaid interest, in accordance with the terms and conditions set forth in the Agreement dated [Insert Date] between GridKor, LLC and MGM Linehaul Inc. (the "Agreement").

**Payment Terms**

Maker agrees to pay the principal sum and any accrued and unpaid interest according to the payment schedule and other terms and conditions specified in the Agreement. All payments shall be made in lawful money of the United States, in immediately available funds, without set-off or counterclaim, and shall be applied first to the payment of accrued and unpaid interest and then to the payment of the **outstanding principal balance**.

**Interest and Penalties**

Interest on the unpaid principal balance shall accrue at the rate specified in the Agreement or, if no rate is specified, at a rate of 9% percent per annum, calculated on the basis of a 365-day year for the actual number of days elapsed. Penalties as described in the agreement above will be added into the final number if target dates are missed or violation of non-solicitation.

**Default**

If Maker fails to make any payment when due or fails to perform any other obligation under this Promissory Note or the Agreement, Payee may, at its option, declare the entire unpaid principal balance, together with all accrued and unpaid interest, immediately due and payable without presentment, demand, protest, or notice of any kind, all of which are hereby expressly waived.

**Remedies**

Upon any default by Maker under this Promissory Note, Payee shall have all rights and remedies available under the Agreement, this Promissory Note, and applicable law, including but not limited to the right to recover any costs, expenses, and reasonable attorneys' fees incurred in connection with the collection or enforcement of this Promissory Note.

U-M.

**Governing Law**

This Promissory Note shall be governed by and construed in accordance with the laws of the state in which the Agreement is executed, without regard to its conflicts of laws principles.

**Severability**

If any provision of this Promissory Note is found to be unenforceable or invalid by a court of competent jurisdiction, the Parties agree that the court should modify such provision to the minimum extent necessary to make it enforceable and valid. If such modification is not possible, the unenforceable or invalid provision shall be deemed severed from this Promissory Note, and the remaining provisions shall continue in full force and effect.

**Shared Responsibility**

In the event that this agreement gets to an executable action in the court of law. All parties signing the promissory note listed in this agreement will share equally in the balance owed.

IN WITNESS WHEREOF, Maker has executed this Promissory Note as of the date first above written.

Ucha Matcharashvili

Exhibit H – Attachment A -1

See next page.

## ATTACHMENT A-1

### TRANSPORTATION SERVICE PROVIDER AGREEMENT

### ASSIGNED RUNS AND SPOTS

The Parties agree that this Attachment A-1 to Schedule A to PLI's current Transportation Service Provider Agreement ("Agreement" or "TSPA") will be effective on the date appearing in the electronic signature block below. The Parties further agree that this Attachment A-1 supersedes any previously executed Attachment A-1 and, except for the changes and additions in this Attachment A-1, this Agreement remains in full force and effect, and each Party agrees to continue to be bound by its terms.

1.    **ASSIGNED RUNS, ASSIGNED SPOTS AND POSITIONS ON UNASSIGNED RUN ROTATIONS**

The Parties agree that any non-temporary Assigned Runs, including Assigned Spots, and/or Positions on Unassigned Run Rotations held by the Transportation Service Provider under this Agreement are listed and described in the tables below. Assigned Runs, including Assigned Spots, are also listed and described on *MyGroundBizAccount*. If the listing and/or descriptions on this Attachment A-1 and *MyGroundBizAccount* differ, the listing and descriptions on PLI's latest, fully executed Attachment A-1 will govern.

### ASSIGNED RUNS

**Tractor: 164127**

| Leg | Run Origin | Run Destination | Lane Destination | Run Number | Day of Week | Alt Week |
|-----|-----------|-----------------|------------------|------------|-------------|----------|
| 1 | 00182 | 00633 | 00633 | 1 | __Tu_Th__ | 0 |
| 2 | 00633 | 00619 | 00619 | 1 | __Tu_Th__ | 0 |
| 3 | 00619 | 00182 | 00182 | 1 | ___We_Fr_ | 0 |
| 4 | 00182 | 07547 | 00633 | 1 | _____Sa | 0 |
| 5 | 07547 | 00182 | 00182 | 1 | _____Sa | 0 |

**Tractor: 291300**

| Leg | Run Origin | Run Destination | Lane Destination | Run Number | Day of Week | Alt Week |
|-----|-----------|-----------------|------------------|------------|-------------|----------|
| 1 | 00170 | 07135 | 00760 | 1 | __Tu_Th_Sa | 1 |
| 2 | 07135 | 00170 | 00170 | 1 | __Tu_Th_Sa | 1 |
| 3 | 00170 | 07135 | 00760 | 1 | ___We_Fr_ | 2 |

Page 2 of 4
TSPA US Version 2022.08.27

Attachment A-1
TSPA No. C8630208

| 4 | 07135 | 00170 | 00170 | 1 | ___We_Fr_ | 2 |

**Tractor: 291301**

| Leg | Run Origin | Run Destination | Lane Destination | Run Number | Day of Week | Alt Week |
|-----|-----------|-----------------|------------------|------------|-------------|----------|
| 1 | 00170 | 07135 | 00774 | 1 | __Tu_Th_Sa | 1 |
| 2 | 07135 | 00170 | 00170 | 1 | ___We_Fr_ | 1 |
| 3 | 00170 | 07135 | 00774 | 1 | ___We_Fr_ | 2 |
| 4 | 07135 | 00170 | 00170 | 1 | Su___Th_Sa | 2 |

**Tractor: 291302**

| Leg | Run Origin | Run Destination | Lane Destination | Run Number | Day of Week | Alt Week |
|-----|-----------|-----------------|------------------|------------|-------------|----------|
| 1 | 00170 | 00644 | 00644 | 1 | __Tu_Th__ | 1 |
| 2 | 00644 | 00170 | 00170 | 1 | ___We_Fr_ | 1 |
| 3 | 00170 | 07429 | 00644 | 1 | _____Sa | 1 |
| 4 | 07429 | 00170 | 00170 | 1 | _____Sa | 1 |

**Tractor: 291303**

| Leg | Run Origin | Run Destination | Lane Destination | Run Number | Day of Week | Alt Week |
|-----|-----------|-----------------|------------------|------------|-------------|----------|
| 1 | 00170 | 07639 | 00274 | 3 | SuMoTuWeThFrSa | 1 |
| 2 | 07639 | 00170 | 00170 | 3 | SuMoTuWeThFrSa | 1 |

**Tractor: 291304**

| Leg | Run Origin | Run Destination | Lane Destination | Run Number | Day of Week | Alt Week |
|-----|-----------|-----------------|------------------|------------|-------------|----------|

Page 3 of 4
TSPA US Version 2022.08.27

Attachment A-1
TSPA No. C8630208

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | 00170 | 07051 | 00619 | 1 | __TuWeThFrSa | 1 |
| 2 | 07051 | 00170 | 00170 | 1 | __TuWeThFrSa | 1 |

### Tractor: 291305

| Leg | Run Origin | Run Destination | Lane Destination | Run Number | Day of Week | Alt Week |
|---|---|---|---|---|---|---|
| 1 | 00170 | 07408 | 00389 | 1 | __TuWeThFrSa | 1 |
| 2 | 07408 | 00170 | 00170 | 1 | __TuWeThFrSa | 1 |

### Tractor: 291306

| Leg | Run Origin | Run Destination | Lane Destination | Run Number | Day of Week | Alt Week |
|---|---|---|---|---|---|---|
| 1 | 00170 | 00552 | 00552 | 1 | __Tu_Th__ | 1 |
| 2 | 00552 | 00170 | 00170 | 1 | ___We_Fr_ | 1 |
| 3 | 00170 | 70015 | 00552 | 1 | _____Sa | 1 |
| 4 | 70015 | 00170 | 00170 | 1 | _____Sa | 1 |

### Tractor: 291307

| Leg | Run Origin | Run Destination | Lane Destination | Run Number | Day of Week | Alt Week |
|---|---|---|---|---|---|---|
| 1 | 00170 | 00841 | 00841 | 1 | __Tu____ | 1 |
| 2 | 00841 | 00170 | 00170 | 1 | ____Th__ | 1 |
| 3 | 00170 | 08502 | 00841 | 1 | _____Sa | 1 |
| 4 | 08502 | 00170 | 00170 | 1 | Su_____ | 2 |
| 5 | 00170 | 00841 | 00841 | 1 | ___We___ | 2 |
| 6 | 00841 | 00170 | 00170 | 1 | _____Fr_ | 2 |

## POSITIONS ON UNASSIGNED RUN ROTATIONS

| Tractor ID | Run Origin | Rotation |
|---|---|---|
| 164126 | 00182 | TEAM |
| 164128 | 00182 | TEAM |
| 164129 | 00182 | TEAM |

