GRIDKOR, LLC, *et al.*,          :
                                 :
      Plaintiffs,          :
                                 :  Civil Action No. 5:23-cv-03563
v.                               :
                                 :
IGOR GORBACH, *et al.*,          :
                                 :
      Defendants.          :

## <u>PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

Defendants, under the guise of a fictitious company named "MGM Linehaul," have absconded with nearly $5 million of Plaintiffs' money. MGM is a sham entity that lacks the legal capacity to enter into a contract with anyone. It does not hold the money Plaintiffs paid under their purported agreements with MGM, and it never did. Instead, Plaintiffs' $5 million was dispersed among Defendants and other companies they control. Defendants, by their own admission, have utilized the money personally and applied it to the benefit of other business ventures they control or over which they are attempting to gain control.

In view of Defendants' use of a sham entity to contract with Plaintiffs and Defendants' personal exercise of control over the funds Plaintiff paid to the purported "MGM Linehaul" entity, there is a high likelihood that, absent immediate injunctive relief, Defendants are likely to deplete their assets or at least move them around in a way that may make it difficult, if not impossible, for Plaintiff to collect on any judgment entered by this Court. *See Gelfand v. Stone*, 727 F. Supp. 98, 102 (S.D.N.Y. 1989) (stating injunctive relief is appropriate where the totality of circumstances indicate that the "past predilection for deceptive and fraudulent practices is likely to continue"). In fact, Defendants have admitted to as much in their communications with Plaintiffs, confirming the personal use of some of the funds at least by Defendants Gorbach,

Maydanskyy and Jacobs and they have admitted to plans move their operations (and assets) to new ventures in other places now that FedEx has discovered their involvement in the companies they induced Plaintiffs to acquire.

Plaintiffs GridKor, LLC ("GridKor") and GridKor Trucking and Logistics LLC ("GTL"), therefore, request that the Court enter a temporary restraining order and preliminary injunction against Defendants preventing them from transferring, assigning, conveying, encumbering, pledging, or otherwise disposing of any interest in real, personal, or intangible property outside the ordinary course of business or ordinary uses to pay household expenses until at least $4,941,037.18 (the total amount by which Defendants were unjustly enriched, less the $142,000 returned in April and May 2023) is placed in escrow with the Court. Plaintiffs further request that the Court order Defendants to provide the Court and Plaintiffs with a bi-monthly accounting of expenses paid in the ordinary course of business or ordinary use to pay household expenses.

## FACTUAL BACKGROUND

As set forth in the Verified Complaint (Doc. 1), Defendants induced Plaintiffs to enter into agreements with a fictitious entity purportedly called "MGM Linehaul Inc.," "MGM Linehaul Consulting, Inc.," and/or "MGM Linehaul Consulting" under which Plaintiffs then paid and/or caused to be paid nearly $5 million to purchase a majority ownership interest in each of five Pennsylvania trucking companies. According to the agreements and Defendants' representations, the purported MGM entity was to retain minority interests in the companies and manage their operations pursuant to a management agreement. (Verified Compl. ¶¶ 21-63.)

Defendants, however, failed to deliver on their promises to Plaintiffs, and instead sought to substitute newly-acquired, less valuable assets for those which Defendants had represented the acquired companies owned and controlled. (Verified Compl. ¶¶ 64-83.) After giving

Defendants repeated opportunities to cure their failures of performance and in an effort to mitigate their losses, in early April 2023 GridKor entered into a new agreement with the purported MGM entity backed up by promissory notes executed by five individual defendants—Defendants Gorbach, Collins, Maydanskyy, Matcharashvili, and Mitic—pursuant to which MGM was to return $3.5 million to GridKor. Plaintiffs in turn agreed to relinquish their interest in four of the companies, but absorbed 100 percent ownership of the fifth company, PSI Logistics Inc. (Verified Compl. ¶¶ 84-100.)

Neither MGM nor Defendants lived up to that bargain either, returning only $142,000. (Verified Compl. ¶¶ 88-98.) Instead, the extent of Defendants' deception began to emerge when FedEx abruptly suspended its dealings with all five companies (including, PSI, the company Plaintiffs had agreed to retain), leading Plaintiffs to discover that FedEx had no knowledge of or relationship with any company by the name of "MGM Linehaul" and no such entity even existed. Instead, Defendants had been concealing their control and ownership of various trucking companies from FedEx while operating them in violation of numerous legal and contractual requirements. Defendant Gorbach (and possibly others), it turned out, had been the subject of investigations by FedEx and the FBI in Utah relating to their business practices. FedEx ultimately suspended all five companies and moved to terminate its relationships with them, eliminating the entirety of their business. Defendants thus transferred $4,941,179.18 to various accounts as directed by Defendants under an agreement with a sham entity, and Defendants failed to deliver or produce any of the things they promised or to return anything more than a small amount of the money.

Plaintiffs now bring this action to recover for the harm inflicted upon them and to remedy the unjust enrichment of Defendants at Plaintiffs' expense. However, based upon statements

3

Defendants have made and information Plaintiffs have learned, there is a significant risk that, absent immediate injunctive relief, Defendants are likely to dissipate and deplete their assets so as to hinder, if not destroy entirely, Plaintiffs' ability to collect on a judgment. Specifically, in a meeting on January 17, 2023, Defendants Gorbach and. Maydanskyy stated that the money GridKor had paid them "is completely gone." They specifically stated that $950,000 of the funds were taken by Defendant Jacobs and that they had taken $800,000 for themselves. They did not give a full accounting of the rest of the funds, but generally stated they had used the money to buy trucks, repair trucks, and buy out investors or partners in other businesses. (Exh. 1, M. Bryant Decl. ¶ 2.) Further, in the months following receipt of Plaintiffs' money, Defendant Gorbach bought a new Lexus automobile and Defendant Maydanskyy bought or made improvements to a house and purchased luxury vehicles (a BMW 7 series and a Range Rover). (*Id.* ¶ 3.) Accordingly, Defendants have made personal use of the funds Plaintiffs paid under a contract with "MGM Linehaul."

In addition, Defendants also have a history of moving assets (including cash, trucks, contracts, and routes) between companies almost at will. When Plaintiffs questioned the lack of results and the minimal performance of the five companies they had purchased in December 2022, Defendants Gorbach, Maydanskyy and Collins stated that they needed to move trucks and runs between companies in order for Plaintiffs' companies to perform as they had promised, explaining that they did this all the time. (Exh. 1, M. Bryant Decl. ¶ 6.) In the wake of FedEx's actions terminating that work, Defendants Gorbach, Maydanskyy and Collins have each admitted that they presently intend to buy another company, called "Top Notch," and they intend to transfer assets, including trucks, to that entity. (*Id.* ¶ 7.) As recently as August 29, 2023, Mr.

Gorbach indicated to us that he is making plans, possibly in conjunction with other investors, to take control of as many as twelve other trucking companies. (*Id.* ¶ 8.)

Further, Defendants have a demonstrated practice of exercising control over companies and assets where their effective ownership and/or control are concealed. Indeed, the five companies Plaintiffs attempted to acquire in December 2022 were all nominally owned by a single individual, but controlled by Defendants from the shadows. Moreover, in conversations Defendant Gorbach has stated that he owns real estate in Philadelphia, but he has put it in someone else's name so as to protect the asset. (Exh. 1, M. Bryant Decl. ¶ 4.) Defendant Gorbach has also made multiple statements about owning large amounts of land in Ukraine, though he has not been specific about the name(s) under which such assets are held. (*Id.* ¶ 5.)

**ARGUMENT**

**A.    Legal Standard**

To obtain a preliminary asset freeze, a plaintiff must make the showings required for a preliminary injunction under Rule 65, *i.e.*, (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent injunctive relief; (3) whether injunctive relief is in the public interest; and (4) whether the non-moving party will suffer greater harm if the injunction is granted. *See JRNA, Inc. v. Snow*, No. 07-cv-01995, 2007 WL 2253493 at *3 (E.D. Pa. Aug. 3, 2007). Additionally, the plaintiff must also: (1) assert a cognizable equitable claim; (2) demonstrate a sufficient nexus between the claim and specific assets of the defendant that are the target of the injunctive relief; and (3) show that the requested interim relief is a reasonable measure to preserve the *status quo* in aid of the ultimate equitable relief sought. *See id.*; *see also Allstate Ins. Co. v. Davidson Medical Group*, No. 01-5938, 2004 WL 2357797 at *2 (E.D. Pa. Oct. 18, 2004); *F.T Int'l Ltd. v. Mason*, No. 00-

5

5004, 2000 WL 1514881 at *1 (E.D. Pa. Oct. 11, 2000).

As set forth in the sections that follow, Plaintiffs satisfy all of these requirements.

**B.      Plaintiffs Assert Claims Cognizable in Equity**

Plaintiffs' Verified Complaint alleges that Defendants have been unjustly enriched because their wrongful conduct caused Plaintiffs to contract with a fictitious entity and transfer $4,941,179.18 to accounts controlled by Defendants, Defendants have failed to deliver on their promises, and they have failed to return the funds despite promises to do so. For the purposes of a preliminary asset freeze, unjust enrichment is a cognizable claim in equity. *See Symphony FS Limited v. Thompson*, No. 5:18-cv-3904, 2018 WL 6715894, at *8-9 (E.D. Pa. Dec. 20, 2018); *JRNA, Inc.*, 2007 WL 2253493 at *3; *Allstate Ins. Co.*, 2004 WL 2357797 at *2; *FT Int'l Ltd.*, 2000 WL 1514881 at *1; *see also US. ex rel. Rahman v. Oncology Assoc.*, 198 F.3d 489, 497-98 (4th Cir. 1999) ("unjust enrichment count is recognized as equitable" for the purposes of a preliminary asset freeze).

**C.      There Is a Sufficient Nexus Between Plaintiffs' Unjust Enrichment Claims and the Assets Targeted by Plaintiffs' Requested Asset Freeze**

The Verified Complaint and the further evidence submitted in connection with this Motion also shows Defendants' personal possession and control over the funds they obtained from Plaintiffs, including specific admissions of personal use of those funds by at least three of the Defendants and the use of those funds for or in connection with other businesses or business ventures Defendants control. This establishes a sufficient nexus between Plaintiffs' claim and the assets targeted by the injunction. *See Allstate Ins. Co.*, 2004 WL 2357797 at *2 ("clear nexus" exists where assets targeted by requested freeze have "unjustly enriched" defendant); *accord JRNA, Inc.*, 2007 WL 2253493 at *3 (sufficient nexus exists where an "unjust enrichment claim is directly linked to the assets plaintiff seeks to freeze").

**D.** **The Requested Asset Freeze Is a Reasonable Measure to Preserve the Status Quo**

A preliminary asset freeze is also a reasonable measure to preserve the *status quo* in this case, such that it would protect the Court's ability to ultimately order relief. *See Mendelsohn, Drucker, & Assocs., P.C. v. Titan Atlas Mfg., Inc.*, No. CIV.A. 12-0453, 2013 WL 247245, at *3 (E.D. Pa. Jan. 23, 2013); *JRNA, Inc.*, 2007 WL 2253493 at *3 ("asset freeze is a reasonable measure to preserve the *status quo* in service of the ultimate equitable relief requested"); *F.T. Int'l Ltd.*, 2000 WL 1514881 at *2 ("A TRO is also reasonable because it would aid the court in granting the equitable relief sought.").

Further, applying Pennsylvania law, courts have granted preliminary injunctions to enjoin the dissipation of funds on numerous occasions. *See, e.g.*, *Ambrogi v. Reber*, 2007 PA Super 278, ¶ 12, 932 A.2d 969, 975 (2007) ("We conclude that Pennsylvania law does not preclude a trial court from granting a preliminary injunction to prevent dissipation of assets."); *Citizens Bank of Pennsylvania v. Myers*, 2005 PA Super 113, ¶ 19, 872 A.2d 827, 836 (2005) (affirming preliminary injunction enjoining transfers out of identified bank accounts); *Am. Express Travel Related Servs. Co., Inc. v. Laughlin*, 424 Pa. Super. 622, 623 A.2d 854, 856–857 (1993) (affirming preliminary injunction entered to enjoin the concealing or dissipation of funds), *appeal denied* 535 Pa. 644, 633 A.2d 149 (1993); *East Hills TV & Sporting v. Dibert*, 366 Pa. Super. 455, 531 A.2d 507, 509 (1987) (seller may be enjoined from using funds in seller's bank so as to prevent potential loss of funds belonging to buyer and necessary to carry on its business); *cf. Walter v. Stacy*, 837 A.2d 1205, 1210 (Pa. Super. 2003) (noting that preliminary injunction requiring placement of funds into escrow and requiring court approval before utilizing the funds to prevent the "unfair, wholesale dissolution of their assets in anticipation of civil liability" was "proper," but vacating and remanding case for imposition of a bond).

**E.      Plaintiffs Are Likely to Succeed on Their Unjust Enrichment Claim**

To establish a reasonable probability of success on the merits to support a TRO or preliminary injunction, a "plaintiff need only prove a prima facie case, not a certainty that [it] will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001); *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) ("[The court does] not require at the preliminary stage a more-likely-than-not showing of success on the merits because a likelihood of success on the merits does not mean more likely than not.").

To state a claim for unjust enrichment under Pennsylvania law, "a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'" *Torchia on Behalf of Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985) (quoting *Roman Mosaic & Tile Co. v. Vollrath*, 313 A.2d 305, 307 (Pa. Super. Ct. 1973)); *see also Lampe v. Lampe*, 665 F.3d 506, 520 (3d Cir. 2011) (unjust enrichment requires a benefit conferred on defendant which defendant retained in circumstances that would make it inequitable for defendant to retain it).  "In order to recover, there must be *both* (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied." *Torchia,* 499 A.2d at 582–83 (quoting *Samuels v. Hendricks*, 445 A.2d 1273, 1275 (Pa. Super. Ct. 1982)).

Unjust enrichment claims fall into one of two categories:  (1) a quasi-contract theory of liability, where the unjust enrichment claim is brought as an alternative to a breach of contract claim; or (2) a "companion" theory of liability, where the unjust enrichment claim is a companion to a tort claim and seeks to divest the defendant of a benefit obtained by committing the tort.  *See, e.g.*, *Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 561 (E.D. Pa. 2010); *Torchia*, 499 A.2d at 582.  Plaintiffs' claim in this case falls within both categories.

8

*First*, Defendants purported to execute two contracts on behalf or in the name of "MGM Linehaul," a fictitious entity. Both contracts, therefore, are void. "MGM Linehaul" lacked capacity to contract and, therefore, could not create a binding agreement. *Cf. In re Rothman*, 204 B.R. 143, 150 (Bankr. E.D. Pa. 1996) (before articles of incorporation are filed corporation "will be deemed to not yet be in existence, and thus lacking the capacity to enter into a contract") (citing *Zalewski v. Pennsylvania Rabbit Breeders Cooperative Ass'n*, 76 Pa. D. & C. 225, 226 (Ct. Com. Pleas 1950)); *In re Main, Inc.*, No. 98-6460, 1999 WL 689715 at *8 (E.D. Pa. Sept. 3, 1999) (promotor of corporation cannot contractually bind company before corporation is formally in existence).

A quasi-contract theory of unjust enrichment is "typically invoked ... when [the] plaintiff seeks to recover from [the] defendant for a benefit conferred under an unconsummated or void contract." *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999). As such, where a plaintiff has conferred a benefit on a defendant pursuant to a void contract, a quasi-contract theory of unjust enrichment applies. *Cf. Symphony FS*, 2018 WL 6715894 at *9-10 (recognizing that unjust enrichment claim premised on sham nature of contracting entity would provide equitable basis for asset freeze injunction, but denying same because evidence showed contractual counterparty did, in fact, exist as a legitimate entity).

*Second*, with respect to Plaintiffs' second theory of unjust enrichment, an unjust enrichment claim may be pled as a companion, not an alternative, to a tort claim. In that case, the unjust enrichment seeks to recover a benefit the defendant gained by committing the tort. "In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)." *Steamfitters*, 171 F.3d at 936. Defendants accepted and retained Plaintiffs'

funds by committing fraud and it would be unjust to allow them to retain the benefits they received. *See Euro Motorcars Germantown, Inc. v. Manheim Remarketing, Inc.*, No. CIV.A. 13-7614, 2015 WL 1057887, at *7 (E.D. Pa. Mar. 4, 2015) ("It is clear that where there is a viable fraud claim, a claim for unjust enrichment may be an appropriate adjunct.").

Plaintiffs are likely to succeed on their unjust enrichment claim.

**F.      Plaintiffs Will Likely Suffer Irreparable Harm Without Preliminary Relief**

The Third Circuit recognizes that "the unsatisfiability of a money judgment can constitute irreparable injury." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205 (3d Cir. 1990); *see also JRNA, Inc.*, 2007 WL 2253493 at *4 ("A probable, unsatisfied money judgment constitutes a form of irreparable harm.").   To that end, a defendant's "own prior conduct [can] establish[] a likelihood that in the absence of an asset freeze ...  Plaintiffs will not be able to recover improperly diverted funds and will thus be irreparably harmed." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (affirming asset freeze against CEO where he had convinced fellow directors to divert $35 million in company funds to his personal bank account); *see also Panyanouvong v. Aphy*, No. 2:14-cv-00275 RSM, 2014 WL 2986507 at *6 (W.D. Wa. July 1, 2014) (granting asset freeze where defendant's "own conduct establishe[d] that [it] is likely that in the absence of an asset freeze, Plaintiffs will not be able to recover the funds").   Accordingly, "when allegations of past fraud are coupled with supplemental evidence that demonstrates a likelihood of dissipation, courts may freeze assets."  *Fidelity Nat'l Title Ins. Co. v. Castle*, No. C 11-00896 SI, 2011 WL 5882878 at *6 (N.D. Cal. Nov. 23, 2011) (granting asset freeze where allegations of defendant's fraud were "well documented" and showed wrongful diversion of funds for defendant's personal benefit); *see also Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.*, No. 3:17-CV-196, 2017

WL 4863208 at *2-5 (W.D. Pa. Oct. 26, 2017) (holding "significant threat of wrongful dissipation and transfer of assets to frustrate the collection of Plaintiff's judgment is sufficient demonstration of a likelihood of irreparable harm if injunctive relief is not granted"); *Gelfand v. Stone,* 727 F. Supp. 98, 102 (S.D. N.Y. 1989) (stating that injunctive relief is appropriate where the totality of circumstances indicate that the "past predilection for deceptive and fraudulent practices is likely to continue.").

For instance, in *Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.*, *supra*, the court enjoined the "Defendants—along with their officers, directors, principals, agents, representatives, servants, employees, affiliates, successors, or assigns, and any person or entity acting on their behalf, in concert with, or in participation with them" … "from transferring, assigning, conveying, encumbering, pledging, or otherwise disposing of any interest in real, personal, or intangible property, outside the ordinary course of business or ordinary use to pay household or other living expenses" without court approval. *Id.* at *5. The court held injunctive relief was necessary to prevent immediate and irreparable harm to the plaintiff because, absent such relief, the defendants were likely to dissipate and deplete their assets such that the plaintiff would be unable to collect on the judgment. *Id.* at *2. The court's holding was based upon a finding that the plaintiff had alleged sufficiently that the defendants had previously performed evasive transfers to avoid the collection of the judgment and "will likely once again engage in such evasive conduct to dissipate assets and transfer them beyond the reach of Plaintiff such that Plaintiff's judgment would go unsatisfied." *Id.*; *see also Mendelsohn, Drucker, & Assocs., P.C.*, 2013 WL 247245 at *3.

Here, Defendants' entire course of misconduct amply demonstrates that they are "more than capable of placing assets in [their] personal possession beyond the reach of a

11

judgment." *Johnson*, 572 F.3d at 1085. To start, Defendants have no qualms about conducting millions of dollars in fraudulent business through an imaginary company. This consideration is a red flag for likely asset dissipation. *See Fidelity Nat'l Ins. Co.*, 2011 WL 5882878 at *7 (finding likelihood of asset dissipation where "business organizations are shams set up to assist in perpetuating the fraudulent schemes alleged in the complaint").

Further, Defendants have acknowledged their own personal use of Plaintiffs' funds, they have exercised control over companies and property nominally owned by persons other than themselves, and they have a history of shifting funds, assets, and contracts across the multitude of companies in which they are involved to suit their immediate interests and objectives. In fact, Defendants have stated their intent to do exactly that in the near future and shift their assets and operations to new companies operating in different areas. Evidence that a defendant has a history of being "lax" with "other people's money" can also be a basis for finding likely irreparable injury. *Andrews v. Holloway*, No. 95-1047 (JBS), 1995 WL 875883 at *16 (D.N.J. Nov. 9, 1995).

Plaintiffs will be irreparably harmed without the requested asset freeze.

**G.     Plaintiffs' Requested Asset Freeze Is in the Public Interest**

The public-interest prong of the Court's analysis is readily satisfied. Courts have consistently ruled that "the prevention of unjust enrichment by means of fraud or misrepresentation, even that affecting only private entities, is in the general public interest." *F.T. Int'l Ltd.*, 2000 WL 1514881 at *2. "The public has an interest in the enforcement of judgments." *State Farm Mut. Auto Ins. Co. v. Am. Rehab & Physical Therapy, Inc.*, 376 Fed. Appx. 182, 184 (3d Cir. 2010). "The public interest will be furthered if judgment debtors are prohibited from frustrating the legal process, and judgment creditors are protected from having to

expend endless resources to collect on their judgments." *Star Creations Inv. Co. v. Alan Amron Dev., Inc.*, No. Civ. A. 95-4328, 1995 WL 495126 at *20 (E.D. Pa. Aug. 18, 1995); *see also Covertech Fabricating*, 2017 WL 4863208 at *3 ("The public interest certainly does not condone … evasive and fraudulent activities" to evade a plaintiff's recovery efforts.); *JRNA, Inc.*, 2007 WL 2253493 at *5 (asset freeze served public interest "by discouraging the misappropriation of funds by business employees").

A TRO and preliminary injunction in this case are squarely in the public interest.

**H.     The Balance of Equities Clearly Favors Plaintiffs**

Lastly, the requested asset freeze will help Plaintiffs more than it will harm Defendants.  When granting an asset freeze, a "court must make some attempt reasonably to relate the value of the assets encumbered to the likely value of the expected judgment." *Hoxworth*, 903 F.2d at 198.   A court must also tailor the injunction to ensure that its terms are no more onerous than necessary and reasonably account for a defendant's economic needs.  *See Johnson*, 572 F.3d at 1085-86 (prejudice to defendant imposed by freeze order "would be substantially mitigated by limiting the injunction to permit [defendant] to cover normal living expenses and legal fees and by allowing [defendant] to petition the court at any time for consent to an asset transfer or disposal") (internal quotation marks omitted); *Fidelity Nat'l Title Ins. Co.*, 2011 WL 5882878 at *7 ("The Court finds that as long as the preliminary injunction is sufficiently limited such that it does not freeze [defendant's] *personal* funds to cover reasonable living expenses, the balance of equities tips in plaintiffs favor.") (emphasis in original).   Plaintiffs' requested asset freeze is mindful of those constraints.

Plaintiffs' proposed order would only enjoin Defendants from transferring assets

outside of the ordinary course. If the Motion is denied, Defendants will be able to continue business as usual at the expense of Plaintiffs. Indeed, absent a court order, there is nothing to stop Defendants from moving the nearly $5 million owed to Plaintiffs to new receptacles for their schemes, transferring money among themselves and other entities they control (known or unknown to Plaintiffs), or even dissipating all their assets so that Plaintiffs are left with no money to recover. By contrast, Defendants will not be materially harmed if the Court temporarily restrains and preliminarily enjoins asset transfers outside of the ordinary course. To the extent any of these Defendants believe they need to sell, encumber, or otherwise transfer assets during the pendency of the Court's injunction order, they may petition the Court to seek authorization. Further, Plaintiffs have no objection to Defendants voluntarily posting adequate security in favor of Plaintiffs in lieu of this injunctive relief.

Under similar circumstances, other federal courts have granted preliminary injunctions freezing defendants' assets, finding such injunctions were in the public interest. *See, e.g.*, *Covertech Fabricating*, 2017 WL 4863208 at *2(balance of harms "clearly and strongly weighs in favor of Plaintiffs" where injunction only precluded asset transfers outside the ordinary course of business and thus would "scarcely harm[ ]" Defendant's lawful business but Plaintiff stood to lose "upwards of $5.4 million in the form of an unsatisfied judgment"); *JRNA, Inc.*, 2007 WL 2253493 at *5; *Allstate Ins. Co.*, 2004 WL 2357797 at *4; *F.T. Int'l Ltd*, 2000 WL 1514881 at *2.; *see also Berger v. Weinstein*, Civ. A. No. 08-5861 2016 WL 1359459, at *8 (E.D. Pa. Apr. 6, 2016).

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an Order in the form attached to Plaintiffs' Motion that temporarily restrains and enjoins

Defendants from dissipating or transferring assets.


Dated:  September 15, 2023                    Respectfully submitted,

**MARINO FINLEY LLP**


/s/ Daniel Marino
Daniel Marino (PA38892)
dmarino@marinofinley.com
Tillman J. Finley (*pro hac vice* forthcoming)
tfinley@marinofinley.com
818 Connecticut Avenue, N.W., Suite 801
Washington, DC  20006
(202) 223-8888

## CERTIFICATE OF SERVICE

I hereby certify that, on September 15, 2023, I served or caused to be served true and correct copies of the foregoing and all attachments thereto on the following Defendants in the fashion indicated below:

Igor Gorbach (in person and via email to igorgorbach1@gmail.com)

William Collins (in person and via email to bill@mrrouteinc.com)

Oleksandr Maydanskyy (in person and via email to oleksandrmaydansky@gmail.com)

Ucha Matcharashvili (via email to georgiantransportation@gmail.com)

Milos Mitic (via email to championmilos@gmail.com)

Pavlo Tupychak (via email to pavlo.tupychak@ptkdevelopment.com)

Jonathan Jacobs (via email to jjacobs@jsrir.com)


/s/ Daniel Marino