## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRIDKOR, LLC, et al. | : CIVIL ACTION |
| | : |
| | : |
| v. | : NO.  23-3563 |
| | : |
| IGOR GORBACH, et al. | : |

### MEMORANDUM

SCHMEHL, J.  /s/ JLS                                             JULY 15, 2024

Plaintiffs brought this diversity action against the Defendants on September 14.

2023, asserting state law claims for unjust enrichment, civil conspiracy, fraud,

enforcement of promissory note, violation of the Pennsylvania Securities Act and, in the

alternative, for alter ego liability for breach of contract. Presently before the Court is the

motion of Defendants William Collins, Igor Gorbach, Ucha Matcharashvili, Oleksandr

Maydanskyy, Milos Mitic, and Pavlo Tupychak[1] to dismiss for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Defendants claim that Defendants Gorbach and Maydanskyy are actually domiciled in

the Commonwealth of Pennsylvania as are Plaintiffs and, therefore, complete diversity

does not exist. For the reasons that follow, the motion is denied.

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a

facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

A factual attack challenges the factual allegations underlying the complaint's assertion

of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing

---

[1] Defendant Jonathan Jacobs, who is represented by different counsel, did not join in this motion.

1

facts.'" *Id*. (alteration in original) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

Conversely, a facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id*. (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).

Because the Defendants' motion to dismiss presented a factual attack on subject matter jurisdiction, the Court directed the parties to engage in jurisdictional discovery and file briefs as to whether the Court could exercise diversity jurisdiction over this matter. (Doc. Nos. 54, 63, 67.)

In a case such as this involving multiple defendants, a plaintiff asserting federal subject matter jurisdiction through diversity of citizenship "must specifically allege each party's citizenship, and these allegations must show that the plaintiff and defendant[s] are citizens of different states." *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990). Diversity is assessed as of the time the complaint was filed. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71(2004).

The party invoking diversity jurisdiction bears the burden of proof. *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011). A party meets this burden by proving diversity of citizenship between the parties by a preponderance of the evidence. *McCann v. Newman Irrevocable Tr.*, 458 F. 3d 281, 290 (3d Cir. 2006).

Our Court of Appeals has stated that "[f]or the purposes of diversity jurisdiction ... "[c]itizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he

is absent, he has the intention of returning.'" *Id*. at 286. "In determining an individual's domicile, courts consider several factors, including 'declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business.'" *Id*. (citation omitted.) "Other factors to be considered may include location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *Id*.

Domicile "can change instantly. To do so, two things are required: '[a litigant] must take up residence at the new domicile, and he must intend to remain there.'" *Id*. "But '[a] domicile once acquired is presumed to continue until it is shown to have been changed.'" *Id*. (citing *Mitchell v. United States*, 88 U.S. 350, 353 (1874); *Korn v. Korn*, 398 F.2d 689, 691 n. 4 (3d Cir. 1968)). "This principle gives rise to a presumption favoring an established domicile over a new one." *Id*. at 287. "The party claiming a new domicile bears the initial burden of producing sufficient evidence to rebut the presumption in favor of the established domicile." *Id*. at 288. "This presumption does not shift the burden of proof to establish diversity of citizenship away from the proponent of federal jurisdiction...." *Washington*, 652 F.3d at 345. "Accordingly, the presumption's only effect is to require the party asserting a change in domicile to produce enough evidence substantiating a change to withstand a motion for summary judgment or judgment as a matter of law on the issue." *McCann*, 458 F.3d at 288. "If the party does so, the presumption disappears, the case goes forward, and the party asserting jurisdiction bears the burden of proving diversity of citizenship." *Id*.

The Complaint alleges that Plaintiff GridKor, LLC ("GridKor") is a "limited liability company formed and existing under the laws of Wyoming with its principal place of

business located in Allegheny County, Pennsylvania. The members of GridKor are citizens of Pennsylvania, Massachusetts, New Mexico and Texas." ECF 1 at ¶ 8. The Complaint also alleges that Plaintiff Gridkor Trucking and Logistics LLC ("GTL") is a "limited liability company formed and existing under the laws of Pennsylvania with its principal place of business located in Allegheny County, Pennsylvania. The citizenships attributed to GTL via its members are the same as those of GridKor." *Id.* at ¶ 9.

### Defendant Igor Gorbach

According to the Complaint, "Defendant Igor Gorbach is a resident and citizen, for purposes of 28 U.S.C. § 1332, of Connecticut who conducts business from 9883 Old US 22 Breinigsville, Pennsylvania 18031, and regularly travels to Lehigh County and other locations in Pennsylvania for business purposes." *Id.* at ¶10.

In an affidavit sworn to on October 10, 2023, approximately one month **after** this suit was filed, Mr. Gorbach avers that the "Plaintiffs have incorrectly claimed that he is a resident of Connecticut" and that he is a "resident of the Commonwealth of Pennsylvania with a last and current domicile located at 1008 School Lane, Southampton, Pennsylvania, 18966, at which I intend to remain." (Doc. 33.) Mr. Gorbach also testified at his deposition that he has been domiciled in Pennsylvania since February, 2019. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. at 9:1-7.)

The objective evidence of record, however, paints a different story.[2]

1. Mr. Gorbach is a citizen of Ukraine but has been a legal resident of the United States for many years. His green card application showed a Connecticut address and

---

[2] Indeed, having reviewed the deposition testimony of both Mr. Gorbach and Mr. Maydanskyy, the Court finds that their testimony on the issue of their domicile as of the date this suit was filed was evasive and disingenuous at best.

U.S. Citizenship and Immigration Services ("CIS") issued his green card to reflect that address. Mr. Gorbach has never notified CIS of any move to Pennsylvania. (Doc. 69-1. Exh. A, 11/10/23 Gorbach Dep. Tr. at 114:7 – 117:20.)

2. As of September 14, 2023, the date this action was filed, Mr. Gorbach held a New York driver's license bearing a Connecticut address. (Doc. 69-4, Exh. D.)

3. Mr. Gorbach last renewed his New York driver's license on July 25, 2022, which he did in person, in New York, providing, he believes, an electric bill in support and filling out paperwork that included a Connecticut address. (Doc. 69-1, Exh. A 11/10/23 Gorbach Dep. Tr. at 15:18 – 16:19; Doc. 69-3, Exh. C, 3/18/24 Gorbach Dep. Tr. at 49:1-23.)

4. Mr. Gorbach never applied for a Pennsylvania driver's license until November 8, 2023, nearly two months after the filing of this action and two days before his initial deposition in connection with the jurisdictional discovery in this case. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 7:11 – 8:5, 8:19 – 9:12, 43:20-22, 113:5-17; Doc. 69-3, Exh. C, 3/18/24 Gorbach Dep. Tr. at 41:2-10; Doc. 69-4, Exh. D.)

5. The Pennsylvania driver's license Mr. Gorbach obtained on November 8, 2023 is set to expire on June 25, 2024, less than eight months from the date it was issued. (Doc. 69-4, Exh. D.)

6. Mr. Gorbach has never filed a tax return or a request for an extension to file a return in Pennsylvania. Nor has he paid income taxes in Pennsylvania, estimated or otherwise. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 20:20-22, 23:5-12, 27:12-14, 31:23 – 32:8; Doc. 69-3, Exh. C, 3/18/24 Gorbach Dep. Tr. at 12:24 – 17:2.)

7. Mr. Gorbach has filed tax returns, and paid income tax in New York. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 20:13-19, 21:7-13, 51:19 – 52:4.)

8. In 2022, Mr. Gorbach paid estimated taxes in New York. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 26:13 – 27:1.)

9. In his November 10, 2023, deposition, Mr. Gorbach testified he had requested and received from New York extensions to file his personal income tax returns for 2021 and 2022. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 20:13-19, 21:7-13, 51:19 – 52:4.) Mr. Gorbach, however, failed to produce any such requests and, in his March 18, 2024 deposition, admitted his previous testimony on this point was false. (Doc. 69-3, Exh. C, 3/18/24 Dep. Tr. at 52:7 – 55:21.)

10. In 2019, however, Mr. Gorbach's company, Gorbach Trucking, Inc., filed a Pennsylvania S Corporation/Partnership Information Return. The return included PA Schedule NW reflecting "Nonresident Withholding Payments" listing payments made "on behalf of individual shareholders or partners, estates or trusts that were not residents of Pennsylvania" (Doc. 69-6, Exh. F at p. 8 of 12) (emphasis added), the worksheet for which identified Mr. Gorbach as such a recipient (id. at p. 10 of 12). (See also Doc. 69-3, Exh. C, 3/18/24 Gorbach Dep. Tr. at 79:5 – 83:5.)

11. Mr. Gorbach's accountants, DeFreitas & Minsky, LLP and Darpol Travel Bureau Inc., are located in New York. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 19:1 – 20:7.)

12. Over the years, Mr. Gorbach has registered seven vehicles in New York, all with either New York or Connecticut addresses. (Doc. 69-7, Exh. G.)

13. Mr. Gorbach has never registered a vehicle in Pennsylvania. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 43:17-19.)

14. Since January 2021, all vehicles Mr. Gorbach has driven regularly were registered in Connecticut. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 51:1-18.)

15. As of September 14, 2023 (and during his interactions with Plaintiffs in 2022 and 2023), Mr. Gorbach drove a Lexus LX 600 bearing a Connecticut license plate which he purchased in 2022 from a dealership in Connecticut and registered in Connecticut in the name of his daughter and ex-wife. (Doc, 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 40:21 – 41:16, 42:1-7; Doc. 69-8, Exh. H; Doc. 41-1, M. Bryant Decl. ¶¶ 2-4.) On the advice of counsel, Mr. Gorbach refused to answer why the Lexus LX 600 was not registered in his name if he paid for it and was driving it. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 94:23 – 95:19.)

16. No one related to Mr. Gorbach has ever attempted to register Mr. Gorbach's Lexus LX 600 in Pennsylvania, though they did change the plates and registration to North Carolina after September 14, 2023, when Mr. Gorbach's daughter moved to the Charlotte area. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 42:11 – 43:4.)

17. Until 2022, Mr. Gorbach had health insurance through ConnectiCare (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 106:8 – 108:19), an insurance company specifically for residents of Connecticut (Doc. 69-3, Exh. C, 3/18/24 Gorbach Dep. Tr. at 28:11-21) and the bills for which showed a Connecticut address (Doc. 69-3, Exh. C, 3/18/24 Gorbach Dep. Tr. at. 30:16 – 31:11).

18. As of September 14, 2023, Mr. Gorbach's ex-wife and daughter lived in Connecticut. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 97:10-24.) They have

since moved to North Carolina. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 42:11 – 43:4.)

19. On various occasions from July 2022 through September 2023, Mr. Gorbach told GridKor's President, Michael Bryant, he lived in Connecticut, and he made references to his home being there. (Doc. 41-1, M. Bryant Decl. ¶ 2.)

21. Mr. Gorbach's Facebook page, which he updated as recently as March 2022, states he resides in Connecticut. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 89:9 – 91:21; Doc 69-9, Exh. I.)

22. Mr. Gorbach attends church in Stamford, Connecticut. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 57:19 – 58:8.)

23. Mr. Gorbach has a fishing license in Connecticut, but not in Pennsylvania. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 102:2-15.)

24. Mr. Gorbach has a boating license in Connecticut. (Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 102:21-24.)

25. Even more revealing is the fact that in September, 2021, Mr. Gorbach and another individual filed a lawsuit in the United States District Court for the District of New Jersey, *Katserman, et al. v. Navahrutski*, Case No. 2:21-cv-16531-SDW-MAH, ECF Entry No. 1 (D.N.J.), in which Mr. Gorbach alleged that he "is an adult individual who resides and is a citizen of the State of New York." (Doc. 69-2, Exh. B.) *See Kubin v. Miller*, 801 F. Supp. 1101, 1111 (S.D.N.Y. 1992) (holding party was estopped from declaring Connecticut citizenship in attempt to defeat diversity jurisdiction where, three years earlier, he had relied upon his status as a New York citizen in invoking diversity jurisdiction in another action). Therefore, Mr. Gorbach's allegation in the 2021 lawsuit

that he "resides and is a citizen of the State of New York" estops him from now claiming in this 2023 lawsuit that he has been domiciled in Pennsylvania since February, 2019.

Finally, the Court notes that, despite having had ample time to respond yo jurisdictional discovery, Mr. Gorbach has failed to produce any of the following:

1. Statements for any personal bank accounts in Pennsylvania;

2. Any personal tax returns or requests for extensions to file tax returns, whether for 2023, 2022, 2021, or any prior year.

3. Any personal tax returns or requests for extension filed in New York.

4. Any requests for extension to file tax returns for 2021 and 2022 for Gorbach Trucking, Inc., which he testified were made. (Doc. 69-1, Exh. A, 3/18/24 Gorbach Dep. Tr. at. 12:5 – 15:10.)

5. Documentation relating to his green card and communications with CIS regarding the same and his current residence.

6. Pay statements or stubs, 1099s, W-2s or any other such documents showing earnings and his place of residence. (See Doc. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 105:19 – 106:2.)

Indeed, the only evidence that Mr. Gorbach has submitted that even shows any connection to Pennsylvania is his averment in his affidavit that he has "a last and current domicile located at 1008 School Lane in Southampton, Pennsylvania, 18966 at which [he] intend[s] to remain." Doc. 33.

However, Mr. Gorbach testified at his deposition that the only reason he became involved with the property at 1008 School Lane was because his trucking company, Gorbach Trucking, Inc., committed in 2019 to buying the property and an automobile

from another individual in return for access to certain FedEx trucking routes. (Doc. No. 69-1, Exh. A, 11/10/23 Gorbach Dep. Tr. at 9:1-10, 113:5-17; Doc. No. 69-3, Exh. C, 3/18/24 Dep. Tr. at 34:9 – 36:23, 67:15 – 68:19.)

Although Mr. Gorbach agreed to make monthly mortgage payments and manage the property for a period of 12 months, after which Mr. Gorbach agreed he would "make prior arrangements to buy the property and payback [the seller's] downpayment, it was Gorbach Trucking, Inc. which actually made the monthly payments and paid certain expenses. (Doc. No. 69-3, Exh. C, 3/18/24 Gorbach Dep. Tr. at 4:18 – 6:7; Doc. 69-11, Exh. K.) At the end of the 12-month period, Mr. Gorbach did not purchase the property and had not done so at any time since. (Doc. 69-3, Exh. C, 3/18/24 Gorbach Dep. Tr. at 68:20 – 70:15.) Indeed, the property is currently for sale. Mr. Gorbach's claim that he was domiciled at this property on September 14, 2023 and intends to remain there simply is not credible.

### Defendant Oleksandr Maydanskyy

According to the Complaint, "Defendant Oleksandr 'Sacha' Maydanskyy is a resident and citizen, for purposes of 28 U.S.C. § 1332, of New York who conducts business from 9883 Old US 22 in Breinigsville, Pennsylvania 18031, and regularly travels to Lehigh County and other locations in Pennsylvania for business purposes." Doc. 1 at ¶12.

In an affidavit sworn to on October 10, 2023, approximately one month **after** this suit was filed, Maydanskyy avers that the "Plaintiffs have incorrectly claimed" that he is a "resident of the State of New York" and that he is a "resident of the Commonwealth of

Pennsylvania with a last and current domicile located at 613 Washington Crossing, East Stroudsburg, Pennsylvania, at which I intend to remain." (Doc. 33.)

Once again, the objective evidence paints a different story.

1. While Mr. Maydanskyy has produced lease agreements indicating he co-signed with one of his two girlfriends an October 2021 lease for an apartment in Macungie, Pennsylvania and a November 2022 month-to-month extension thereof, he has produced no documentary evidence that he himself lived at that apartment on a permanent basis, was responsible for any utilities or bills there, had any financial or other correspondence directed to him there, or ever used that address as his own on any documents or correspondence of any kind. Even though the lease remains in place, Mr. Maydanskyy does not claim to live there even now. (Doc. 69-12, Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 18:8-24.)

2. The property located at 613 Washington Crossing, East Stroudsburg, Pennsylvania which Mr. Maydanskyy now claims as his residence is owned by his parents, Oleh Maydanskyy and Lesya Maydanska, as a vacation home. (Doc. 69-12, Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 7:23 – 8:8.)

3. According to Mr. Maydanskyy, it was only after this lawsuit was filed that he and/or his parents changed any utilities or other bills associated with the 613 Washington Crossing property to Mr. Maydanksyy's name. (Doc. 69-12. Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 24:3 – 25:15.)

4. However, Mr. Maydanskyy's mother testified that he did not pay rent on the property, there was no lease agreement with her son to stay there, and he did not (at

least as of January 30, 2024) pay for any of the utilities servicing the property. (Doc. 69-14, Exh. N, 1/30/24 L. Maydanska Dep. Tr. at 8:17 – 9:7.)

5. On December 9, 2021—two months after Mr. Maydanskyy claims to have moved to Pennsylvania—he obtained a New York driver's license with an address in West Babylon, New York. (Doc. 69-15, Exh. O.) This was the same license Mr. Maydanskyy still held on September 14, 2023, when this suit was filed, though it had been revoked in May 2022. (Docs. 69-15 and 69-16, Exhs. O & P.)

6. Six days after this case was filed, on September 20, 2023, Mr. Maydanskyy obtained another New York driver's license again showing his residence in West Babylon, New York. (Doc. 69-12, Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 9:2-15; Docs. 69-16 and 69-17, Exhs P & Q.)

7. New York records show Mr. Maydanskyy had reapplied for a New York driver's license, which was approved on September 20, 2023. (Doc. 69-16, Exh. P.)

8. Mr. Maydanskyy never applied for nor had a Pennsylvania driver's license until January 4, 2024. (Doc. 69-12, Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 7:1-7; Doc. 69-13, Exh. M, 2/20/24 Dep. Tr. at 47:14 – 51:22; Doc. 69-18, Exh. R.)

9. As of September 14, 2023, Mr. Maydanskyy had never registered a vehicle in Pennsylvania. (Doc. 69-12, Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 51:21-23.)

10. As of September 14, 2023 (and during his interactions with Plaintiffs in 2022 and 2023), Mr. Maydanskyy drove a vehicle bearing a New York license plate and registered in New York. He was still driving that vehicle at the time of his deposition on November 10, 2023. (Doc. 69-12, Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 17:3 – 18:7; 67:12-18; Doc. 69-19, Exh. S; Doc. 41-1, M. Bryant Decl. ¶¶ 5-6.)

11. Mr. Maydanskyy has never filed a tax return nor a request for an extension to file a personal return in Pennsylvania. Nor has he paid personal income taxes in Pennsylvania, estimated or otherwise. (Doc. 69-12, Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 30:21 -31:8, 35:11-13; Doc. 69-13, Exh. M, 2/20/24 O. Maydanskyy Dep. Tr. at 5:2 – 8:6, 11:20 – 12:8.)

12. Mr. Maydanskyy has filed tax returns, and paid income tax in New York. (See Doc. 69-13, Exh. M, 2/20/24 O. Maydanskyy Dep. Tr. at 11:20 – 12:2.)

13. Mr. Maydanskyy's accountant, DeFreitas & Minsky, LLP, is located in New York. (Doc. 69-12, Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 36:22 – 37:19.)

14. Mr. Maydanskyy authorized the filing, on April 1, 2022, for tax year 2021, of a New York tax return for UA Logistics Inc., a business of which he is the President and which maintains its headquarters at an address in West Babylon, New York. A Schedule K-1 and the accountant's billing were directed to Mr. Maydanskyy at that West Babylon address. (Doc. 69-13, Exh. M, 2/20/24 O. Maydanskyy Dep. Tr. at 22:21 – 35:8; Doc. 69-20, Exh. T.)

15. On January 19, 2024, Mr. Maydanskyy's accountants prepared and provided to him another New York tax return for UA Logistics Inc. for the tax year 2020, still identifying him as the President and representing that he resided in West Babylon, New York and including a Schedule K-1 directed to him at that address. (Doc. 69-13, Exh. M, 2/20/24 O. Maydanskyy Dep. Tr. at 35:10 – 38:9; Doc. 69-21, Exh. U.) Mr. Maydanskyy testified that he never received the January 19, 2024 letter. *Id*. at 36.

20. On various occasions from July 2022 through September 2023, Mr. Maydanskyy told GridKor's President, Mr. Bryant, that he lived in New York or on Long

Island, and he made references to his home being there. (Doc. 41-1, M. Bryant Decl. ¶ 5.)

21. On April 20, 2023, Mr. Maydanskyy was involved in a car accident in Monroe County, Pennsylvania. News accounts of the incident identified him as "Oleksandr Maydanskyy, 30, of West Babylon, New York." (Doc. 69-12. Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 11:7 – 16:10; Doc. 69-23, Exh. W.)

22. Mr. Maydanskyy maintains personal bank accounts at a Chase branch I New York and at a Ukranian bank in New York. (Doc. 69-12, Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 65:4 – 66:6.)

23. Mr. Maydanskyy claims to also have a Bank of America account in Allentown, Pennsylvania he opened in December 2022 (Doc. 69-12, Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 66:6- 17), but as noted below, he has produced no documentation of that.

Finally, the Court notes that despite having had ample time to respond to jurisdictional discovery, Mr. Maydanskyy has failed to produce any of the following:

1. Mr. Maydanskyy claims that 2021 and 2022 tax returns are on extension (Doc. 69-12, Exh. L, 11/10/23 O. Maydanskyy Dep. Tr. at 31:9 – 34:18; Doc. 69-13, Exh. M, 2/20/24 O. Maydanskyy Dep. Tr. at 5:2-15), but he has not produced any documentation reflecting that or any personal tax returns for those periods.

2. Mr. Maydanskyy has not produced any bank statements showing he had any personal bank accounts in Pennsylvania prior to September 14, 2023.

3. Mr. Maydanskyy has not produced any bills or other documentation showing his responsibility for any utilities or other expenses in connection with his Pennsylvania girlfriend's apartment in Macungie, Pennsylvania.

4. Mr. Maydanskyy has not produced any bills associated with the 613 Washington Crossing property at which he claims to now reside which are addressed to him and dated prior to September 14, 2023. He has produced only a November 2023 invoice from a home security company and a January 2024 credit card statement addressed to him at the East Stroudsburg address of his parents' vacation home. (Docs. 69-24 and 69-25, Exhs. X & Y.)

5. Though he claims they exist (Doc. 69-13, Exh. M, 2/20/24 O. Maydanskyy Dep. Tr. at 10:3 – 11:19), Mr. Maydanskyy has not produced any pay statements or stubs, 1099s, W-2s or any other such documents showing earnings and his place of residence.

Based on the objective evidence in this case, the Court finds that Defendants cannot meet their initial burden of production supporting their claim that either Messrs. Gorbach or Maydanksyy changed their domiciles to Pennsylvania prior to September 14, 2023, the date of the filing of this lawsuit.  As a result, the Plaintiffs have proven, by a preponderance of the evidence, that complete diversity exists in this case.