| | | |
|---|---|---|
| GRIDKOR, LLC, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. 5:23-cv-03563 |
| v. | : | |
| | : | |
| IGOR GORBACH, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## SHOW CAUSE ORDER

**AND NOW** this _____ day of _____, 2024, upon consideration of

the Motion for Order to Show Cause of Plaintiffs GridKor, LLC and GridKor Trucking and

Logistics LLC, the Court hereby **GRANTS** said Motion.

Accordingly, **IT IS HEREBY ORDERED** that, on or before the hearing scheduled in this

matter for 10:00 a.m. on Wednesday, September 4, 2024, Defendants Gorbach, Collins,

Maydanskyy, Matcharashvili, Jacobs, and Tupychak shall show cause, if any, why they should not

be held in contempt for violation of this Court's Preliminary Injunction Order (Doc. 11) and why

the Court should not take remedial action, including but not limited to:

1.      Ordering Defendant Jacobs to deposit the $500,000 he received from Defendants

Collins and Gorbach with the Clerk of Court pending conclusion of this matter;

2.      Ordering Defendants Gorbach, Maydanskyy, Matcharashvili, Jacobs, and

Tupychak to similarly deposit with the Clerk of Court, the $169,833 in unexplained and

undocumented payments they received from Defendant Collins via Mr. Route Inc.; and

3.      Ordering Defendants and their related or affiliated entities to provide the Court and

Plaintiffs with a bi-monthly accounting of all expenses paid in the ordinary course of business or

ordinary use to pay household expenses, and to give three (3) business days' notice and an opportunity to object before making any payment in excess of $5,000.

BY THE COURT:

_____

**JEFFREY L. SCHMEHL, J.**

Dated: _____, 2024

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

GRIDKOR, LLC, *et al.*,   :
                                                               :

        Plaintiffs,   :

                                                            :   Civil Action No. 5:23-cv-03563

v.   :

IGOR GORBACH, *et al.*,   :

        Defendants.   :

## <u>MOTION FOR ORDER TO SHOW CAUSE</u>

Plaintiffs GridKor, LLC and GridKor Trucking & Logistics LLC, by and through the undersigned counsel, hereby move the Court for an Order requiring Defendants Gorbach, Collins, Maydanskyy, Matcharashvili, Jacobs, and Tupychak to show cause why they have not violated the September 18, 2023 Preliminary Injunction Order (Doc. 11).  As detailed herein, the Preliminary Injunction Order plainly prohibited Defendants and their agents and affiliates from transferring "any interest in real, personal, or intangible property outside the ordinary course of business," yet Defendants Gorbach and Collins have, on numerous occasions, transferred more than $1 million to each other, Defendants Maydanskyy, Matcharashvili, Jacobs, and Tupychak and/or companies controlled by them, and other persons and entities, all outside the ordinary course of business.  Defendants' violations began within 10 days of the Court's entry of the Preliminary Injunction Order, and have continued unabated.  Accordingly, upon notice and opportunity to respond, Plaintiffs request that the Court hold Defendants Gorbach, Collins, Maydanskyy, Matcharashvili, Jacobs, and Tupychak in contempt and order remedial measures, including the return of the funds received by Defendants in violation of the Preliminary Injunction Order and further injunctive relief designed to prevent future violations.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

**A.     The Underlying Lawsuit**

Plaintiffs have brought this lawsuit against seven individuals who, under the guise of a fictitious company named "MGM Linehaul," induced Plaintiffs to pay nearly $5 million to purchase a majority ownership interest in each of five trucking companies.  After failing to deliver on their promises, Defendants agreed to buy back four of the five companies and to return $3.5 million to Plaintiffs.  But Defendants never performed under either deal or revealed the fact that "MGM Linehaul" was a non-existent company, Defendants were managing the trucking companies in violation of numerous laws and the contractual requirements of their sole customer, FedEx Ground, and at least one of Defendants had a history of misconduct which led Defendants to conceal his involvement from FedEx.  FedEx ultimately terminated its relationships with all five companies upon discovering Defendants' involvement and practices, leaving Plaintiffs out nearly $5 million and left with only a possible legal claim of ownership to one worthless company (albeit without full control over or access to, or even complete knowledge of, the company's assets).  On September 14, 2023, Plaintiffs filed their Verified Complaint (Doc. 1) and the Court issued the Summons later that same day (Doc. 4).

**B.     Plaintiffs Move for a Preliminary Injunction and Serve, or Otherwise Provide Notice to, Defendants**

The next day, September 15, 2023, at a meeting in Moon Township, Pennsylvania, Defendants Gorbach, Collins, and Maydanskyy were served with the Verified Complaint, the Summons, and a copy of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction and supporting Memorandum.  (*See* Doc. 8.)  Plaintiffs then filed their Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 5) and supporting Memorandum

(Doc. 6). Plaintiffs then emailed all seven Defendants copies of the filings in the case to that point. (Doc. 82 at 3:18 – 4:17.)

On the afternoon of September 15, 2023, Judge Smith issued an Order scheduling a telephone conference for Monday, September 18, 2023. (Doc. 7.) Plaintiffs' counsel promptly provided a copy of that Order to all seven defendants, and followed up with further emails, telephone calls, and text messages to the various defendants ensuring they received copies of all filings, the Court's Order, and the date, time, and dial-in number for the September 18, 2023 telephone conference. (Doc. 82 at 3:18 – 9:15.)

**C.      Defendants Fail to Appear, Respond, or Otherwise Defend and the Court Proceeds to Make Findings of Fact and Conclusions of Law and Enters the Preliminary Injunction Order**

On September 18, 2023, Judge Smith convened the telephonic hearing as scheduled. (Doc. 10.) Counsel for Plaintiffs joined and entered their appearances, but none of the Defendants or any of their attorneys or other representatives appeared. (*See* Docs. 10 & 82.) Following inquiry by Judge Smith and a detailed presentation by Plaintiffs' counsel of all of the communications with Defendants regarding the lawsuit, the filings, and the scheduled hearing, Judge Smith specifically found there had been adequate notice to the Defendants and that they had chosen not to appear. (Doc. 82 at 2:20 – 10:2, 16:20 – 17:1.)

Judge Smith summarized the substance of the Verified Complaint, observing that much of the conduct at issue "was criminal conduct, that this was an organized scheme to defraud, and that the plaintiff – unfortunately, plaintiffs had been caught up in this scheme and defrauded of almost $5 million." (Doc. 82 at 10:5-9; *see also id.* at 10:3 – 16:7.) Based upon his finding that there had been adequate notice to the Defendants yet none of them or an attorney on their behalf had appeared, and noting that "it would appear they're not opposed to the entry of the relief" requested, Judge Smith stated "I consider this to be the preliminary injunction hearing" (Doc. 82 at 16:15 –

3

18:15) and proceeded to announce his findings and conclusions based upon the evidence in the

record (*see id.* at 20:21 – 23:8). Judge Smith ruled, in part, as follows:

> …. I do find that, based on the allegations of the complaint which I've incorporated in, which have been duly certified by the plaintiffs, that even though this is an extraordinary remedy, that you do have a very high likelihood of success on the merits, that you will suffer irreparable harm if they were able to further dissipate any of these assets, which I'm not even quite sure who owns the assets such as the trucks, et cetera.
>
> And so to the extent they're dissipating those assets, once they're gone, they're gone, because I'm presuming so goes the money, as went the $5 million. So time is an issue here.
>
> I don't believe that granting the preliminary waiver will result in greater harm to the non-moving party. I don't think it'll really cause them any harm. And I'm concerned exactly how you would enforce this preliminary injunction against them. I'm not even sure they're opposed to it based on their failure to appear to be heard here today.
>
> And obviously, to the extent the allegations suggest that this was a fraud, certainly the public interest is served by freezing those assets and requiring the accounting that you've requested. So I do find that you've met the requirements for a preliminary injunction in this case, and I'm going to grant the preliminary injunction in accordance with what you requested.
>
> ….
>
> My concern here is, I'm sure, the same as what the plaintiff's concern is, is that this was a scheme to defraud, that it was executed over time, and was successful, and that the money is now gone. And whatever assets might still remain should be frozen until we get to the bottom of it.
>
> Maybe it was not a fraud. Maybe it was just a bad deal, maybe a good deal. Maybe ultimately, everyone will make money. But on the surface, it appears there is a need for urgent action, and irreparable harm may result if we don't take that action.

(Doc. 82 at 21:13 – 23:8.)

The same day, Judge Smith signed an Order which included the following:

**THE COURT FINDING THAT**, for the reasons stated on the record today, that the plaintiffs have demonstrated (1) a prima facie case of success on the merits of the claims asserted in their complaint; (2) that they will suffer irreparable harm if immediate injunctive relief is not granted; (3) that the defendants will not suffer

greater harm if injunctive relief is granted; and (4) that entry of an injunction is in the public's interest; …

(Doc. 11 at 1-2.) Judge Smith then specifically ordered as follows:

The defendants, Igor Gorbach, William Collins, Oleksandr Maydanskyy, Ucha Matcharashvili, Milos Mitic, Pavlo Tupychak and Jonathan Jacobs, along with their agents, representatives, servants, employees, affiliates, successors, or assigns, and any person or entity acting on their behalf or in concert or participation with them, are hereby **ENJOINED** from transferring, assigning, conveying, encumbering, pledging, or otherwise disposing of any interest in real, personal, or intangible property outside the ordinary course of business or ordinary uses to pay household expenses until $4,941,037.18 is placed in escrow with the court or adequate security in favor of the plaintiffs is otherwise posted by the defendants and proof thereof is provided to counsel for the plaintiffs and filed with the court;

(Doc. 11 at 2.)

## D. The Court Gives the Defendants Another Chance to Be Heard, Which They Fail to Take Advantage of in a Timely or Supported Fashion

Despite his findings and ruling on September 18, 2023, Judge Smith gave the Defendants another opportunity to be heard on the matter. Specifically, Judge Smith made clear "I want to hear from the defendants. If they have reason that this injunction is not appropriate, I think I want to give them every opportunity to be heard in that regard, or if they believe that the bond is no longer necessary, or the injunction is no longer necessary." (Doc. 82 at 23:13-17.) Judge Smith, therefore, scheduled another telephonic conference for September 25, 2023, and directed Plaintiffs' counsel to provide notice of that conference to the Defendants via email. (Doc. 82 at 24:1-12.) Plaintiffs did so following the Clerk's docketing of Judge Smith's Order on September 19 (Exh. 1), and even sent a follow up reminder on the morning of September 25 (Exh. 2).

On the morning of September 25, 2023, counsel noticed his appearance for Defendant Jacobs (Doc. 13) and filed a Motion for Reconsideration of the Preliminary Injunction Order (Doc. 14). Mr. Jacobs' motion did not take issue with the form of the Court's Preliminary Injunction Order or contend that it did not comply with Rules 52 or 65; neither did Mr. Jacobs argue the

5

injunction was vague, unclear, or insufficiently specific. (*See* Doc. 14.) Mr. Jacobs' motion for reconsideration instead argued that the Court lacked personal jurisdiction over him, that he had not received "proper notice" of the hearing, that Plaintiffs were not likely to succeed on the merits of their claims against Mr. Jacobs specifically, and that he would be harmed if the order remained in place. (Doc. 14.)

At the telephonic conference that afternoon, Attorney Andrew Ralston entered his appearance on behalf of the other six Defendants. (Doc. 16.) With all parties now represented by counsel, Judge Smith set a hearing for reconsideration of the Court's preliminary injunction on October 13, 2023, and expressly ordered that "[i]f the additional defendants wish to file motions and memoranda of law for reconsideration of the preliminary injunction, they shall do so no later than **Friday, September 29, 2023**[.]" (Doc. 17 (emphasis in original).)

Plaintiffs and Defendant Jacobs subsequently reached agreement on the language of a modified preliminary injunction applicable to Mr. Jacobs (Doc. 25), which the Court entered on October 5, 2023 (Doc. 26). Mr. Jacobs having withdrawn his motion for reconsideration, and the other Defendants having filed no such motion, the Court cancelled the October 13, 2023 hearing. (Doc. 26 ¶ 7.)

A week later, on October 12, 2023, Defendants Gorbach, Collins, Maydanskyy, Matcharashvili, Mitic, and Tupychak filed a (untimely) motion for reconsideration of the Preliminary Injunction Order. (Doc. 34.) Like Mr. Jacobs, Defendants did not take issue with the form of the Preliminary Injunction Order, did not argue that it failed to comply with Rules 52 or 65, and did not argue that it was vague, unclear, or insufficiently specific in any way. Instead, Defendants contended that the Court lacked subject matter jurisdiction (Doc. 34 at 2-5), only Mr. Maydanskyy had signed the April 6 Agreement (*id.* at 5-8), the April 6 Agreement and the

promissory notes were "extracted through duress" (*id.* at 8-10), the promissory notes were unenforceable for want of consideration (*id.* at 10-11), generally disputed the merits of Plaintiffs' claims (*id.* at 11-13), invoked the gist of the action doctrine (*id.* at 14), invoked the *status quo antebellum* (*id.* at 15), disputed that Plaintiffs would suffer irreparable harm absent an injunction (*id.* at 16), disputed that injunctive relief was in the public interest (*id.* at 17), and argued the balance of harms weighed against an injunction (*id.* at 18). Defendants did not submit any evidence of any kind in support of their motion for reconsideration. (*See* Doc. 34.) Plaintiffs filed a response to Defendants' belated motion on September 26, 2023 (Doc. 41), but Judge Smith did not rule on the motion prior to his death.

**E.      Defendants Proceed to Ignore and Violate the Preliminary Injunction Order**

Beginning with a series of transactions on September 18, 2023—just 10 days after the Court's issuance of the Preliminary Injunction Order—Defendants Collins and Gorbach began transferring large sums of money (totaling in excess of $1 million) to their co-Defendants and others. Among these transfers are the following:

| No. | Date | Transferor (owned/controlled by) | Transferee (owned/controlled by) | Amount |
|-----|------|----------------------------------|----------------------------------|--------|
| 1 | 9/28/23 | Mr. Route Inc. (Collins) | Victoria Logistics, Inc. (Jacobs) | $5,000 |
| 2 | 9/28/23 | Mr. Route Inc. (Collins) | PTK Development Inc. | $5,400 |
| 3 | 9/28/23 | Mr. Route Inc. (Collins) | Hurricane Logistics, Inc. | $20,000 |
| 4 | 9/28/23 | Mr. Route Inc. (Collins) | ON Transport (Gorbach) | $33,000 |
| 5 | 9/28/23 | Mr. Route Inc. (Collins) | Gorbach Trucking (Gorbach) | $33,333 |
| 6 | 9/28/23 | Mr. Route Inc. (Collins) | Law Office of Richard Divolio | $50,000 |
| 7 | 9/28/23 | Mr. Route Inc. (Collins) | Georgian Transportation (Matcharashvili) | $66,000 |

| | | | | |
|---|---|---|---|---|
| 8 | 10/10/23 | Mr. Route Inc. (Collins) | Alinea Transportation Inc. | $10,000 |
| 9 | 10/11/23 | Mr. Route Inc. (Collins) | Victoria Logistics, Inc. (Jacobs) | $5,000 |
| 10 | 10/11/23 | Mr. Route Inc. (Collins) | PTK Development, Inc. | $5,400 |
| 11 | 10/17/23 | Mr. Route Inc. (Collins) | Gorbach Trucking (Gorbach) | $3,500 |
| 12 | 10/23/23 | Mr. Route Inc. (Collins) | Georgian Transportation (Matcharashvili) | $15,000 |
| 13 | 11/3/23 | Mr. Route Inc. (Collins) | Gorbach Trucking (Gorbach) | $1,000 |
| 14 | 11/8/23 | Mr. Route Inc. (Collins) | Victoria Logistics Inc. (Jacobs) | $5,000 |
| 15 | 11/8/23 | Mr. Route Inc. (Collins) | PTK development Inc. | $5,400 |
| 16 | 11/8/23 | Mr. Route Inc. (Collins) | Georgian Transportation (Matcharashvili) | $18,000 |
| 17 | 11/8/23 | Mr. Route Inc. (Collins) | Levitton and Company Inc. | $20,000 |
| 18 | 11/8/23 | Mr. Route Inc. (Collins) | Hurricane Logistics | $20,000 |
| 19 | 11/8/23 | Mr. Route Inc. (Collins) | JJMB Logistics LLC | $20,000 |
| 20 | 11/8/23 | Mr. Route Inc. (Collins) | Chulleui Lee | $27,000 |
| 21 | 11/8/23 | Mr. Route Inc. (Collins) | Sherzod Khamidor | $50,000 |
| 22 | 11/8/23 | Mr. Route Inc. (Collins) | K4 Logistics Inc. | $50,000 |
| 23 | 11/8/23 | Mr. Route Inc. (Collins) | Dominic DeSimone | $100,000 |
| 24 | 11/8/23 | Mr. Route Inc. (Collins) | Jonathan Jacobs | $200,000 |
| 25 | 11/17/23 | Mr. Route Inc. (Collins) | Law Office of Richard J. Davolio, PC | $50,000 |
| 26 | 1/5/24 | Hunter Transportation, Inc. (Gorbach) | Jonathan Jacobs | $150,000 |
| 27 | 1/5/24 | Hunter Transportation, Inc. (Gorbach) | Jonathan Jacobs | $150,000 |

| 28 | 3/21/24 | Mr. Route Inc. (Collins) | SAAAS, LLC | $215,000 |
|---|---|---|---|---|
| 29 | 5/22/24 | Mr. Route Inc. (Collins) | Jeremy Feldman | $10,900 |
| | **TOTAL:** | | | **$1,343,933** |

(Exhs. 3 through 13.)

There are very likely many more transactions than these in view of the fact that Defendants Gorbach, Maydanskyy, Matcharashvili, and Tupychak have yet to respond to *any* of the written discovery served by Plaintiffs beginning on June 15, 2024, only Defendants Jacobs and Collins have appeared for depositions, and only Defendant Collins has produced any documents.[1] Further, in his deposition, Defendant Collins refused to answer questions about a number of transactions, including assertions of his Fifth Amendment privilege against self-incrimination. (*See* Exh. 13 at 18:8 – 20:19, 27:2 – 28:1, 42:21 – 43:20, 44:22 – 46:9.) Even with Defendants' scattered and incomplete responses and, in numerous instances, outright defiance of their discovery obligations, as detailed *infra* in Section C it is clear that most, if not all, of the above transfers violated the Court's Preliminary Injunction Order.

## ARGUMENT

Civil contempt sanctions are "remedial in nature," having two possible purposes: "to coerce compliance with a court order or to compensate the other party for losses sustained due to noncompliance." *United States v. Pozsgai*, 999 F.2d 719, 735 (3d Cir. 1993); *see also Berne Corp. v. Gov't of the V.I.*, 570 F.3d 130, 139 (3d Cir. 2009). Civil contempt sanctions may not be punitive, however, as punitive sanctions are appropriate only for criminal contempt. *See Pozsgai*, 999 F.2d at 735 ("Criminal contempt, by contrast, is a punitive sanction, designed to vindicate the

---

[1] Further, all that Mr. Collins produced were bank statements that were almost entirely redacted, concealing nearly all of the transactions listed in the table above. Plaintiffs had to subpoena Mr. Collins' bank to get complete, unredacted records.

court's authority for the contemnor's past non-compliance with a court order, and therefore cannot be cured by the contemnor."). Provided the civil contempt sanctions are remedial, rather than punitive, district courts have "broad discretion" to fashion an appropriate sanction. *See John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545, 554 (3d Cir. 2003).

To show contempt, a movant must demonstrate "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010). Contempt must be shown by clear and convincing evidence, and any ambiguities must be resolved in Defendants' favor. *See id.*; *John T.*, 318 F.3d at 552. However, willfulness is not an element of civil contempt, so Defendants may be in contempt even if they did not willfully violate the Court's order. *See Lane Labs*, 624 F.3d at 582. As such, "good faith is not a defense to civil contempt." *Id.*; *see also John T.*, 318 F.3d at 552 ("Willfulness is not a necessary element of civil contempt, and, accordingly, evidence regarding good faith does not bar the conclusion that the defendant acted in contempt.").

## A.     Judge Smith's Preliminary Injunction Order Is Valid

There is no basis on which to conclude Judge Smith's Preliminary Injunction Order was invalid. As detailed below, Judge Smith stated findings and conclusions on the record at the September 18, 2023 hearing, a hearing in which Defendants all failed to participate despite notice of more than 60 hours and the opportunity to participate by phone. Nonetheless, Judge Smith gave Defendants yet another opportunity to make their case against the preliminary injunction, but they failed to do so in any way that can relieve them from compliance with that Order. No Defendant raised any issue with the Order's compliance with Rules 52 or 65. Six of the seven Defendants did not submit anything by the deadline established by the Court, instead filing only a belated Motion for Reconsideration asserting various arguments addressed to the underlying factual and

legal merits of the preliminary injunction.  (Doc. 34.)  With the exception of the subject matter jurisdiction challenge the Court has already rejected (Doc. 75), none of those arguments challenged the *validity* of the order.  (*See* Doc. 34.)  In any event, Defendants' assorted arguments for reconsideration were untimely and without merit as detailed in Plaintiffs' response to the motion which is incorporated by reference herein.  (Doc. 41.)

Now, almost a year later, Defendant Collins has claimed, in his interrogatory responses, that the Preliminary Injunction Order "is unenforceable to the extent it was improvidently granted" and "because it was issued *ex parte*, without the requisite showing, and fails to comply with the requirements of Fed. R. Civ. P. 52(a)(2) and 65(d)."  (Exh. 11 at p. 2 n.1.)  None of these assertions have any merit.  Rule 65(a)(1) expressly provides that "[t]he court may issue a preliminary injunction only *on notice* to the adverse party."  (Emphasis added.)  The rule does not require the adverse party's presence or participation in order for the Court to issue a preliminary injunction— only that the adverse party receive notice.  Defendants clearly did receive notice, as Judge Smith expressly found both on the record (Doc. 82 at 2:20 – 10:2, 16:20 – 17:1) and in his Preliminary Injunction Order (Doc. 11 at 1).

Rule 52(a)(2) requires that, in granting or refusing an interlocutory injunction, "the court must similarly state the findings and conclusions that support its action."  The word "similarly" is in reference to Rule 52(a)(1), which requires findings of fact and conclusions of law in bench trials. However, the Rule itself is clear that those findings and conclusions need not be set forth in a written order.  To the contrary, the Rule expressly states "[t]he findings and conclusions may be stated on the record after the close of the evidence *or* may appear in an opinion or a memorandum of decision filed by the court."  Fed. R. Civ. P. 52(a)(1) (emphasis added); *see also ADP, Inc. v.*

*Levin*, No. 21-2187, 2022 WL 1184202, at \*2 (3d Cir. Apr. 21, 2022) ("oral findings and conclusions can satisfy Rule 52(a)").

Here, Judge Smith specifically announced his findings and conclusions on the record at the hearing (Doc. 82 at 20:21 – 23:8), which statements he expressly referenced in his Order (Doc. 11 at 1). Compliance with this Rule is measured by a practical, not a formalistic, standard: "the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters." Fed. R. Civ. P. 52, advisory cmt. note (1946 amend.). "[T]here is no necessity for over-elaboration of detail or particularization of facts. Merely indicating the factual basis for the ultimate conclusion will suffice in most cases." *H & R Block Tax Servs. LLC v. Acevedo-Lopez*, 742 F.3d 1074, 1077 (8th Cir. 2014). Judge Smith's findings were specific to the required elements for a preliminary injunction, he justified his findings by reference to the evidence in the record, and he referenced the facts supporting his ultimate conclusions that each element was satisfied.

Rule 65(d) requires that an injunction must (A) "state the reasons why it issued"; (B) "state its terms specifically"; and (C) "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." As with Rule 52(a)(2), the statement of reasons required by Rule 65(d)(1)(A) need not be set forth in the order or judgment itself. *See, e.g.*, *Watchtower Bible & Tract Soc'y of New York, Inc. v. Municipality of San Juan*, 773 F.3d 1, 9-10 (1st Cir. 2014) (reading district court's orders "in conjunction with the hearing transcripts" and holding they satisfied Rule 65(d), which the court held "must be given a commonsense construction, not a hypertechnical one").

By its terms, Rule 65(d) only prohibits reference to or reliance upon another document or source with respect to subsection (C)'s requirement that the act or acts restrained be described "in reasonable detail." But Judge Smith's Preliminary Injunction Order itself sets out in reasonable

detail that which Defendants were prohibited from doing. (Doc. 11 ¶ 2.) As detailed below in Section C, Defendants plainly violated this prohibition by at least 29 times "transferring …, conveying, … or otherwise disposing of an[ ] interest in real, personal, or intangible property outside the ordinary course of business or ordinary uses to pay household expenses." To the extent they now argue the Court's Preliminary Injunction Order was vague or unclear in this regard (which it was not), that did not allow Defendants to ignore the Preliminary Injunction Order. If a defendant is uncertain as to what is permissible under an injunction, he should seek clarification from the Court. *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945); *Glob. NAPs, Inc. v. Verizon New England, Inc.*, 706 F.3d 8, 15 (1st Cir. 2013). Defendants did not do that.

In any event, even if Judge Smith's Preliminary Injunction Order, the transcript of the September 18, 2023 hearing, the Verified Complaint, and Plaintiffs' Motion were not adequate to comply with the requirements of Rules 52(a) and 65(d), Defendants waived any objections on these points. These requirements are not jurisdictional, and they may be waived by a failure to object. *See, e.g.*, *Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 206, 214-15 (3d Cir. 1983) (holding defendant waived argument district court's injunction did not meet the specific requirements of Rules 52(a) and 65(d) where he failed to object to the form of the injunction). Despite having notice and the Court conducting the hearing by telephone so as to make participation as easy as possible, the Defendants all chose not to appear for or participate in the September 18 hearing. Further, while Defendant Jacobs filed and withdrew a motion for reconsideration of the Order, and the other six Defendants filed an untimely motion for reconsideration, in neither of those filings did Defendants make any objection based upon the Preliminary Injunction Order's lack of compliance with Rules 52 or 65 or argue that the Order was unclear, confusing, or insufficient in any way. Instead, they argued the Court lacked jurisdiction

and attempted to relitigate the merits of Plaintiffs' factual and legal contentions, albeit without introducing any evidence of their own.  In fact, *to this day*, there is still *no evidence* anywhere in the record in this case which disputes any of the facts Plaintiffs relied upon in seeking, or the Court found in granting, the preliminary injunction.

Given that the record still does not support the existence of any material factual dispute and Defendants have yet to file an actual objection to the nearly one-year-old Preliminary Injunction Order premised upon Rule 52(a) or Rule 65(d), there is no basis for failing to enforce the Order on this basis.  Indeed, even on appeal, a district court's failure to comply with Rule 52(a) and/or 65(d) is not fatal to the validity and enforceability of the order.  Instead, the court can and will "first look[ ] to see whether the record provides a sufficient basis to ascertain the legal and factual grounds for the grant or denial of the injunction."  *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990); *see also ADP*, 2022 WL 1184202, at *3; *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 712 (3d Cir. 2004).  Or the appellate court can remand for development of a more fulsome record or order.  *See, e.g.*, *Wisconsin Right to Life, Inc. v. Barland*, 751 F.3d 804, 830, 843-44 (7th Cir. 2014) (noting district court's injunction order was "not a proper injunction order" under Rule 65(d)(1), but not reversing or dissolving order on that basis and instead addressing underlying First Amendment issues and directing district court to enter more detailed injunction order in accordance with its opinion on remand).

Accordingly, even if there is any shortcoming with respect to the form or content of Judge Smith's findings, conclusions, or order (which there is not) and assuming Defendants have not already waived any such objections (which they have), the Court should supplement the existing Preliminary Injunction Order with additional content drawn from the still-undisputed record. There is no basis whatsoever for treating the Preliminary Injunction Order as a nullity.

**B. Defendants Had Knowledge of the Order**

Defendants Gorbach, Collins, Jacobs, and Maydanskyy clearly had knowledge of the Preliminary Injunction Order. Plaintiffs' counsel provided them with a copy of it on September 19, 2023 (Exh. 1), and again on September 25, 2023 (Exh. 2). They each filed a motion seeking reconsideration of that very order. (Doc. 14 & 34.)

While Mr. Jacobs negotiated a modified preliminary injunction order that placed more limited restrictions on transfers of his own assets, he was aware (and, in fact, expressly acknowledged) that the Preliminary Injunction Order otherwise remained "in full force and effect." (Doc. 26.) One who is not a party to a preliminary injunction order can nonetheless be liable for contempt of that order if he or she was aware of it and knowingly participated in a violation of the order. Indeed, Rule 65(d)(2)(C) expressly provides that a preliminary injunction order binds any "persons who are in active concert or participation with" the parties subject to the order if such person receives actual notice of the order.

**C. Defendants Violated the Order**

The Preliminary Injunction Order specifically stated its terms and the acts which Defendants were restrained from doing as follows:

> The defendants, Igor Gorbach, William Collins, Oleksandr Maydanskyy, Ucha Matcharashvili, Milos Mitic, Pavlo Tupychak …, along with their agents, representatives, servants, employees, affiliates, successors, or assigns, and any person or entity acting on their behalf or in concert or participation with them, are hereby **ENJOINED** from transferring, assigning, conveying, encumbering, pledging, or otherwise disposing of any interest in real, personal, or intangible property outside the ordinary course of business or ordinary uses to pay household expenses until $4,941,037.18 is placed in escrow with the court or adequate security in favor of the plaintiffs is otherwise posted by the defendants and proof thereof is provided to counsel for the plaintiffs and filed with the court;

(Doc. 11 ¶ 2.) The Court's Order is both clear and specific: Defendants are not to, *inter alia*, transfer, convey, or otherwise dispose of *any* property "outside the ordinary course of business or ordinary uses to pay household expenses."

There can be no dispute that the monetary transfers listed in the table on pages 7-9 are all transfers of property, *i.e.*, funds denominated in U.S. currency. Neither can it be disputed that all of those transfers were made by Defendants Collins and Gorbach, and various of them were transfers to Defendants Gorbach, Maydanskyy, Matcharashvili, Jacobs, and Tupychak, or entities owned and/or controlled by them. The only question, therefore, is whether the transfers were within "the ordinary course of business."[2] The evidence, including Defendants' own sworn statements, makes clear that they were not.

"[O]rdinary course of business" means practices undertaken "in the regular course of events" during "normal routine in managing a trade of business." *Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*, Nos. 3158-VCL & 3406-VCL, 2009 WL 1111179, at *8 (Del. Ch. Apr. 27, 2009) (recounting Black's Law Dictionary definition of "ordinary" and "course of business"). Expenditures made in the "ordinary course of business" are the expenses of maintaining the business's *current* operations, *i.e.*, payments of current or short-term debts incurred as part of maintaining the trade or business. *See In re Craig Oil Co.*, 785 F.2d 1563, 1567-68 (11th Cir. 1986); *In re Industrial Metal Fabricators*, 202 F.2d 33 (6th Cir. 1990); *Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 819 F.2d 214, 216 (9th Cir. 1987); *Matter of Penn Cent. Transp. Co.*, 458 F. Supp. 1234, 1321 (E.D. Pa. 1978). As such, the normal and ordinary routine of conducting business does not include suddenly paying off alleged old debts as

---

[2] There is no basis for contending, and there has been no suggestion that, any of these transfers related to household expenses.

to which no payment had been made for some time, *In re Firestar Diamond, Inc.*, 654 B.R. 836, 892 (Bankr. S.D.N.Y. 2023), satisfying the personal debts of a business owner or the debts of other businesses, the wholesale return of an investment, transacting in goods or assets outside of or different from the regular business of the company, *Fitzgerald v. Beesley*, 139 B.R. 247, 248 (Brankr. D. Idaho 1992) (sale of boat not within ordinary course of debtor's business since debtor's business was sale of mobile homes), or otherwise "destroying business assets," *Ivize*, 2009 WL 1111179 at *9.

### 1. The Payments to Defendant Jacobs

The three transfers to Mr. Jacobs totaling $500,000 (Nos. 24, 26, & 27) were, according to Mr. Jacobs, collectively "a payment for a previously payment for an investment which I invested in with" Defendants Gorbach, Collins, and Maydanskyy, specifically the return of investments by Mr. Jacobs in a company called DND Express in May and June 2022. (Exh. 12, 7/2/24 J. Jacobs Depo. Tr. at 6:10 – 8:14, 9:11 – 14:7.) Mr. Collins testified somewhat differently, claiming these payments were made to Mr. Jacobs as repayment of a loan and/or an investment relating to Victoria Logistics, Inc. (Exh. 13, 7/22/24 W. Collins Depo. Tr. at 7:16 – 10:3.)

Whatever the case may be, the payments did *not* relate to the ordinary course of business of, or have anything at all to do with, *Mr. Route or Hunter Transportation*, the entities that made the payments. These were *not* debts incurred by Mr. Route or Hunter Transportation in the ordinary course of their respective businesses. Mr. Jacobs had no relationship with those entities, and his investment had not been in, for, or related to Hunter Transportation or Mr. Route. (Exh. 12, 7/2/24 J. Jacobs Depo. Tr. at 6:5 – 7:15, 14:19 – 15:25.) Defendant Jacobs confirmed that the payments he received "were for pre-existing debts that were not related to any ordinary sort of business that [he was] engaged in with those entities[.]." (*Id.* at 16:21 – 17:2.) Moreover, at the

time the payments were made, Mr. Jacobs had no ongoing business relationship *of any kind* with Defendant Gorbach or Defendant Collins. (Exh. 12, 7/2/24 J. Jacobs Depo. Tr. at 16:4-20.)

Further, even if Defendants Gorbach and Collins had made the payments from their personal accounts or the account of DND Express, a return of investment is not payment of a current debt necessary to maintain the business operation. This was not Mr. Collins paying the rent or the light bill; it was a sudden windfall to Mr. Jacobs that served no immediate business purpose. Returning all or nearly all of an investor's investment capital is not an expense incurred in the "ordinary course of business." *Cf. Firestar Diamond*, 654 B.R. 836 (suspiciously sudden repayment of alleged "loan" not in ordinary course).

Indeed, Mr. Collins himself admitted he worried that making these payments violated the Court's Preliminary Injunction Order, testifying that he did not know whether he could make the payment or not, but decided to make the payment to Mr. Jacobs anyway because the money was owed to him prior to the entry of the injunction. Specifically, Mr. Collins testified as follows:

> Q. Why did you decide to make the payment to Mr. Jacobs at that point?
>
> A. Because that money was owed to Jacobs prior to the injunction. I would have asked the judge if we were allowed to do that, but the judge died and we didn't have a lawyer at that time because our lawyer fired us.
>
> So I was in a position where I didn't know what to do, so I did what I thought was right, which was to send money to Jacobs because it was a prior money that was owed.

(Exh. 13, 7/22/24 W. Collins Depo. Tr. at 11:3-13.) But whether the money was, in fact, owed to Mr. Jacobs is not the issue; nor is the relative chronology of the alleged obligation and the Court's Order. The issue is whether the payment was one made in the ordinary course of operating the business. It plainly was not.

In discovery, Defendant Jacobs has taken the position that the payments to him by Defendants Gorbach and Collins did not violate the Court's Preliminary Injunction Order because

18

those individuals owed Mr. Jacobs money, and the payments operated to reduce the balances owed to them. ((Exh. 12, 7/2/24 J. Jacobs Depo. Tr. at 26:11 – 28:1.) More specifically, in his interrogatory responses, Mr. Jacobs argued as follows:

> These three payments were owed to Mr. Jacobs for transactions independent from and prior to the transaction outlined in the Verified Complaint. Thus, Mr. Jacobs did not violate the Preliminary Injunction Order because he did not dissipate any assets (Dkt. No. 11).

(Exh. 10, 6/21/24 J. Jacobs Resp. Interrogatory No. 1.) Mr. Jacobs' argument ignores the plain language of the Preliminary Injunction Order. The Order does not require Defendants Gorbach or Collins to maintain their net worth, or prohibit them from making only those transfers that would operate to decrease their assets without a corresponding decrease in their liabilities. Instead, the Order expressly prohibits them from *transferring, conveying, or otherwise disposing of* any asset "outside the ordinary course of business." (Doc. 11 ¶ 2.) The impact of a given transaction on a Defendants' alleged net worth is irrelevant.

### 2. Payments to Satisfy Obligations of Other Companies

A number of the transactions (Nos. 1-2, 9-10, & 14-15) reflect Defendant Collins' use of his company, Mr. Route, Inc., to pay the obligations owed by other companies. For example, by Mr. Collins' own admission, the September 28, 2023 payment of $5,000 to Victoria Logistics (the company owned by Mr. Jacobs) was for the purpose of providing funds with which Mr. Jacobs then made payments on a bank loan secured by two trucks. (Exh. 13, 7/22/24 W. Collins Depo. Tr. at 24:4 – 26:2.) Mr. Collins testified similarly with respect to the payments to PTK Development, owned and/or controlled by Defendant Tupychak. (Exh. 13, 7/22/24 W. Collins Depo. Tr. at 26:8-23.)

Mr. Route, Inc.'s transfer of funds to Victoria, PTK, or any other business so that such business can make its own loan payments are not, and cannot be, payments in the ordinary course of *Mr. Route's business*.

### 3. Undocumented, Undetailed, and Unexplained Payments to Co-Defendants

Seven of the transactions (Nos. 4-5, 7, 11-13, & 16) totaling $169,833 reflect unexplained and/or undocumented transfers from Mr. Route, Inc. to companies owned and/or controlled by the other Defendants. For example, on September 28, 2023, Mr. Collins, through Mr. Route, Inc., paid ON Transport, a company owned by Defendant Maydanksyy, $33,000. (Exh. 13, 7/22/24 W. Collins Depo. Tr. at 30:6-15; Exh. 3.) Mr. Collins claimed this payment was for expenses "for running the trucking business," but could not specify what expenses and did not receive an invoice for any expenses; according to Mr. Collins, "It was on an honor system, that that's what he said that he was owed." (Exh. 13, 7/22/24 W. Collins Depo. Tr. at 30:6 – 32:11.)

At the same time, Mr. Collins made a separate payment to Defendant Gorbach's company, Gorbach Trucking, in the same amount ($33,000), also without an invoice. (Exh. 13, 7/22/24 W. Collins Depo. Tr. at 30:6 – 33:9.) Similar payments appear to have also been made to Georgian Transportation (owned by Defendant Matcharashvili). (Exh. 13, 7/22/24 W. Collins Depo. Tr. at 35:7-20, 37:11-19; Exh. 3-5.)

Such significant transfers among the Defendants, unsupported by any detail or documentation, cannot be considered "ordinary business expenses" of any company, much less the company making those payments, Mr. Route.

### 4. Payments to Settle Other Potential Lawsuits

Mr. Collins paid $150,000 to resolve a threatened lawsuit, including the two $50,000 payments reflected at Nos. 6 and 25 on the List *supra* at pages 7-9. (Exh. 13, 7/22/24 W. Collins

Depo. Tr. at 33:10 – 34:23, 46:10-18.)  Settling a lawsuit is not a current expense incurred in the ordinary course of business to maintain the operation.

### 5. Payments to Purchase Another Company

On October 10, 2023, Mr. Collins paid a $10,000 deposit to buy another company, Alinea Transportation Inc.  (No. 8; Exh. 13, 7/22/24 W. Collins Depo. Tr. at 37:2-10; Exh. 4.)  Purchasing another company is not an expense in the ordinary course of business.

### 6. Payments to Investors

Mr. Collins also paid a company called Hurricane Logistics a total of $40,000 (Nos. 3 & 18), but he refused to say what those payments were for or who or what Hurricane Logistics was, other than that it was "an investor."  (Exh. 13, 7/22/24 W. Collins Depo. Tr. at 27:2 – 28:1.)

As detailed *supra*, return of investment is not a current expense in the ordinary course of business.  Further, there is no evidence that this relates to an investment in Mr. Route, Inc., so at the very least it is not an ordinary business expense of that entity.  Further, Mr. Collins' refusal to answer questions about this company and these transactions should give rise to an adverse inference that his answers would reveal that he violated the Preliminary Injunction Order.

### D. The Court Should Hold Defendants in Contempt and Order Remedial Measures

Upon a finding of civil contempt, the courts have broad equitable powers to fashion a remedy.  *John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545, 554 (3d Cir. 2003).  Civil contempt sanctions are "remedial in nature," having two possible purposes: "to coerce compliance with a court order or to compensate the other party for losses sustained due to noncompliance."  *United States v. Pozsgai*, 999 F.2d 719, 735 (3d Cir. 1993); *see also Berne Corp. v. Gov't of the V.I.*, 570 F.3d 130, 139 (3d Cir. 2009).  This can include ordering the reversal or unwinding of transactions executed in violation of a preliminary injunction.  *See, e.g., The Omaha*

*Indemnity Co. v. Wining*, 949 F.2d 235, 239-40 (8th Cir. 1991) (affirming district court's appointment of receiver for purpose of reversing transaction done in violation of preliminary injunction); *AngioDynamics, Inc. v. Biolitec AG*, 946 F. Supp. 2d 205, 213-16 (D. Mass. 2013) (ordering party to unwind corporate merger done in violation of a preliminary injunction on penalty of increasing fines for noncompliance).

Further, where, as here, "a defendant has failed to comply with a prior injunction," ancillary injunctive relief also "is common." *Aristud-Gonzalez v. Gov't Dev. Bank for P.R.*, 501 F.3d 24, 27 (1st Cir. 2007) (citing *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Veterans Admin.*, 765 F. Supp. 1, 6 (D.D.C. 1991) ("A court has the authority to issue further orders to enforce its prior injunction")). When issuing such ancillary orders, "a court may take into account the compliance with the court's previous orders and the need for a further order to prevent 'inadequate compliance' in the future." *Nat'l Law Ctr. on Homelessness & Poverty*, 765 F. Supp. at 6.

Here, Plaintiffs submit that the Court should take the following actions.

*First*, the Court should order Defendant Jacobs to pay the $500,000 he received in violation of the Preliminary Injunction Order to the Clerk of Court pending conclusion of this matter.

*Second*, the Court should order Defendants Gorbach, Maydanskyy, Matcharashvili, Jacobs, and Tupychak to similarly deposit with the Clerk of Court, the $169,833 in unexplained and undocumented payments from Defendant Collins via Mr. Route Inc.

*Third*, the Court should order further injunctive relief requiring Defendants and their related or affiliated entities to provide the Court and Plaintiffs with a bi-monthly accounting of all expenses paid in the ordinary course of business or ordinary use to pay household expenses, and to give three (3) business days' notice and an opportunity to object before making any payment in excess of $5,000.

**CONCLUSION**

For all of the reasons stated above, Plaintiffs respectfully request that the Court enter an Order requiring Defendants Gorbach, Collins, Maydanskyy, Matcharashvili, Jacobs, and Tupychak to show cause why they should not be held in contempt.

Dated:  August 26, 2024                  Respectfully submitted,

**MARINO FINLEY LLP**

/s/ Daniel Marino
Daniel Marino (PA38892)
dmarino@marinofinley.com
Tillman J. Finley (*pro hac vice*)
tfinley@marinofinley.com
818 Connecticut Avenue, N.W., Suite 801
Washington, DC  20006
(202) 223-8888

*Counsel for GridKor, LLC, GridKor Trucking & Logistics LLC*

# CERTIFICATE OF SERVICE

I hereby certify that, on August 26, 2024, I caused a copy of the foregoing and all attachments thereto was served upon the following counsel of record for Defendants via ECF:

James E. DelBello
James Mangiaracina
POLSINELLI PC
1717 Arch Street, Suite 2800
Philadelphia, PA  19103
jdelbello@polsinelli.com
jmangiaracina@polsinelli.com

*Counsel for Defendant Jonathan Jacobs*

Jeffrey D. Bukowski, Esquire
SMITH BUKOWSKI, LLC
JBukowski@SmithBukowski.com
1050 Spring Street, Suite 1
Wyomissing, PA  19610
(610) 685-1600

*Counsel for Defendants Igor Gorbach, William Collins, Oleksandr Maydanskyy, Ucha Matcharashvili, Milos Mitic, and Pavlo Tupychak*

/s/ Daniel Marino