# EXHIBIT 12



# Deposition of
# **Jonathan Jacobs**

**Date:** July 2, 2024

**Case:** Gridkor, LLC, et al. v. Igor Gorbach, et al.

**No.** 5:23-cv-03563

**Court Reporter:** Stephanie R. Dean, CSR, RPR

Paszkiewicz Court Reporting
Phone:  618-307-9320
Toll-Free:  855-595-3577
Fax:  618-855-9513
www.spreporting.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


GRIDKOR, LLC, et al.,            )
                                 )
          Plaintiffs,            )
                                 )  Civil Action
     vs.                         )  No. 5:23-cv-03563
                                 )
IGOR GORBACH, et al.,            )
                                 )
          Defendants.            )




REMOTE DEPOSITION OF
JONATHAN JACOBS



Taken on behalf of Plaintiffs
July 2, 2024




Stephanie R. Dean, CSR, RPR
Certified Shorthand Reporter
License No. 084-004860

INDEX OF EXAMINATION

EXAMINATION OF JONATHAN JACOBS

BY MR. MARINO                                    5

BY MR. BUKOWSKI                                 18

BY MR. MARINO                                   28

INDEX OF EXHIBITS

(No Exhibits Marked.)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GRIDKOR, LLC, et al.,            )
                                 )
              Plaintiffs,        )
                                 )  Civil Action
         vs.                     )  No. 5:23-cv-03563
                                 )
IGOR GORBACH, et al.,            )
                                 )
              Defendants.        )

          REMOTE DEPOSITION OF JONATHAN JACOBS, produced, sworn, and examined on behalf of Plaintiffs, July 2, 2024, between the hours of 10:04 a.m. EST and 10:41 a.m. EST of that day, before Stephanie Dean, Certified Shorthand Reporter.

REMOTE APPEARANCES

On behalf of the Plaintiffs:

    DANIEL MARINO, ESQ.
    Marino Finley LLP
    818 Connecticut Avenue, N.W., Suite 801
    Washington, DC  20006
    dmarino@marinofinley.com

On behalf of the Defendant Jonathan Jacobs:

    JAMES E. DELBELLO, ESQ.
    Holland & Knight LLP
    1650 Market Street, Suite 3300
    Philadelphia, PA  19103
    james.delbello@hklaw.com

On behalf of the Defendants Igor Gorbach, Williams Collins, Oleksandr Maydanskyy, Ucha Matcharashvili, Milos Mitic and Pavlo Tupychak:

    JEFFREY D. BUKOWSKI, ESQ.
    Smith Bukowski, LLC
    1050 Spring Street, Suite 1
    Wyomissing, PA  19610
    jbukowski@smithbukowski.com

ALSO PRESENT:

    Tillman Finley
    William Collins
    Olesandr Maydanskyy
    Emily Smith

           - - - - - - - -

JONATHAN JACOBS, of lawful age, being produced, sworn and examined on the part of the Plaintiff, and after responding "Yes" to the oath administered by the Notary, Arlene Wolbert, deposes and says:

EXAMINATION OF JONATHAN JACOBS

BY MR. MARINO:

Q. Good morning, Mr. Jacobs. We haven't met before. My name is Dan Marino. I represent the Plaintiffs in this case and I wanted to thank you for making yourself available on kind of short notice.

Do you happen to have with you -- we received some interrogatory responses dated June 21st of this year. Do you happen to have those with you?

**A. Yes.**

Q. And so my questions are really going to be -- I'm sure Mr. DelBello has already told you, my questions are going to be very, very limited to just getting some more background on the answers to these interrogatories. And, in particular, you indicated that you received -- on November 8th you received a wire transfer from a company called Mr. Route, Inc.

**A.** Correct.

Q. This is on November 8, 2023 in the amount of $200,000, right?

**A.** Yes. Correct.

Q. And can you tell me what Mr. Ralph, Inc. is, if you know?

**A.** **Mr. Route, Inc. is a company owned by Bill Collins that is a brokerage firm for trucking routes.**

Q. And can you tell me why you were receiving money from Mr. Route, Inc. on November 8th of last year?

**A.** **It was a payment for a previous payment for an investment which I invested in with Igor, Bill, and Oleks in 2022. It was money that they owed me.**

Q. And Oleks, can you identify who you mean by Oleks?

**A.** **Oleks Maydanskyy and Igor Gorbach.**

Q. Was it Mr. Route, Inc. that owed you the $200,000?

**A.** **It was Igor and Oleks.**

Q. So, in other words, was this a payment or transaction that you had with an entity called Mr. Route, Inc.?

A.   No, it was payment for an investment that I invested in with Igor and Oleks in May of 2022.

Q.   Let me try it again.  If this money was a payment for an investment that you made with these individuals, Igor, Oleks and Bill as you said, why were you receiving money from Mr. Route, Inc., if you know?

A.   I do not know the answer to that.

Q.   So your understanding, again, is this had nothing to -- this payment had nothing to do with Mr. Route, Inc., it was a personal debt that those three individuals owed you?

A.   Yes, that is correct.  Where it came from was none of my business.  That's where it came from.

Q.   And so I think you said this was for the transaction or investment that occurred in May of 2022.

A.   Correct.

Q.   Can you tell me about that investment?

A.   It was a FedEx company that I had purchased from Oleks and Igor in May of 2022 and they --

Q.   Can you identify the name of that company?

A.   DND Express.

Q.   Is that D, as in "Delta," and D, as "Delta," Express?

**A.   D, as in "Delta," N, as in "Nancy," and D, as in "Delta," Express.**

Q.   And you said -- I think you said that was a FedEx company?

**A.   Correct.**

Q.   What do you mean by that?

**A.   It was a FedEx franchise company that had a FedEx license in New Jersey.**

Q.   And so can you tell me what the terms of the investment -- first of all, when did you make the investment that led to this repayment?

**A.   May of 2022.**

MR. DELBELLO:  And, Dan, I'm going to put an objection here just to the scope of this deposition.  I don't think the terms of these investments and the details are really relevant and within the scope of the discovery that the judge ordered him.  I've obviously given you a little leeway to get the context, but I'll just make that objection.

MR. MARINO:  And I'm mindful of that, Jim, and I'll try to limit -- I mean, we've done a little bit of research and I think that one of the

issues from our perspective is whether or not these payments were made in the ordinary course of business, and so that's why from our perspective we need to get into whether or not this is ongoing or something totally unrelated --

MR. DELBELLO: I get it, you need some context, but we don't want to get into a whole lot of other details on these other transactions.

MR. MARINO: Okay. I gotcha. I'll try to keep it limited.

Q. Let's see, you made the investment in May of 2022. How much was that investment?

A. $350,000.

Q. Did the $350,000, did it go to Igor and Oleks?

A. It went to Igor.

Q. Went to Igor. And so was that for the purpose of giving you an ownership interest in this company, DND Express?

A. Yes, it was. Yes, it was.

Q. What were the terms -- in other words, when were you supposed to -- how were you supposed to be compensated for that investment, if you know?

A. I was supposed to end up owning trucks and nothing ever materialized from the investment, so

**they owed me back my principal that I invested with them.**

Q. Was there a contract that reflected this investment and what the obligations were?

**A. Yes, there is.**

Q. And do you still have a copy of that contract?

**A. I do.**

Q. And when you said nothing ever materialized, was it part of the agreement that if nothing materialized you would get your principal back?

**A. Yes.**

Q. And so at what point in time did you conclude that nothing materialized on this particular investment?

**A. In March of 2023.**

Q. And so did you make a demand in March of 2023 to have your principal paid back?

**A. Yes, I did.**

Q. And I take it it was not paid back at that point?

**A. That is correct.**

Q. So your understanding, at least, was that this $350,000 investment was payable to you as of

March of 2023, right?

A. That's correct.

Q. And did you demand payment after that?

A. I sure did.

Q. And when ultimately did you receive pay, if you did?

A. I received $200,000 in November of 2023 and $300,000 in January of 2024.

Q. So what was the total investment that you made in this DND --

A. My total investment was $350,000.

Q. So I'm a little confused. You received -- first you received 200,000 in November, right?

A. Correct.

Q. And when did you receive the remainder of your investment?

A. I received 200,000 in November and I received 300,000 in January for a total of 500-. He owes me more than $350,000. That's why I received more than $350,000.

Q. So, again, I apologize if I've got this confused. What was the total investment that you made in the company?

A. In this particular investment in May, $350,000. I had another investment in June that I

made with him.

Q. June of 2023?

A. **June of 2022.**

Q. And what was the nature of that investment?

A. **It was purchasing a 50 percent ownership in dry van trailers.**

Q. Dry --

A. **Dry van trailers. 53-foot dry van trailers.**

Q. Dry van. Okay. It was 50 percent of the company that had dry van trailers; is that right?

A. **Correct.**

Q. What was that company called?

A. **It wasn't a company, it was 21 trailers that Igor and Oleks had purchased, and I was -- and I became the 50 percent owner in them.**

Q. Of those trailers?

A. **Correct.**

Q. And so you made that investment in June of 2022, correct?

A. **Correct.**

Q. And what were the terms of that investment?

A. **That I would invest $488,000 for a monthly**

return of $15,000 guaranteed.

Q. And did you, in fact, start receiving 15,000 per month?

A. I did receive for two months.

Q. And so that took you past August of 2022?

A. Correct.

Q. And what happened then, did you continue to receive payments or did you stop receiving?

A. I stopped receiving payments.

Q. And so did you demand repayment of your investment at that point?

A. No, not yet.

Q. When, if ever, did you do that?

A. In March of 2023.

Q. And what happened when you demanded repayment of your investment?

A. Nothing happened. I did not receive anything.

Q. Did you make demands for payment?

A. Yes, I did.

Q. Did you ever receive payment for that investment?

A. No.

Q. In other words, did you ever receive any return or portion of your principal in that

investment?

A.   No, I did not.

Q.   So do I have it correct that the payments you received November 8, 2023 and January 5 of 2024 were all for your investment in the DND Express company?

A.   Correct.

Q.   And, if you know, why didn't you receive these payments prior to November 8th and January 5 of 2024?

A.   **Because Igor did not have the capability of paying me back.**

Q.   Have you ever heard of a company called BOI Management?

A.   No, I have not.

Q.   These payments that you received November 8 and January 5, do you know what the source of those funds were?

A.   **November 8 came from Mr. Route and the wire -- there were two $150,000 wires from a company called Hunter Transportation.**

Q.   In terms of -- and if I understand it correctly, we haven't talked about this, but I assume that you didn't have any business relationship with Hunter Transportation; is that

true?

A.    That's correct.

Q.    And I think your interrogatory response says, "Hunter Transportation Services, Inc."  Do you know why you received payments through that company?

A.    I do not know.

Q.    But if I understand it correctly, these were payments that you were owed by Mr. Gorbach, correct?

A.    That is correct.

Q.    And, again, sorry if I'm being redundant, but do you know where Mr. Gorbach got the $300,000 that he wired to you in January?

A.    I do not know.

Q.    At the time that you received the payments, November -- I'm trying to kind of do this quickly, so if I need to break it down, just let me know.  At the time you received these payments November and January of this year -- November of last year, January of this year, did you have any ongoing actual business relationship with -- well, first of all with Mr. Route or with Hunter Transportation?

A.    No, I did not.

Q.   Have you ever had a business relationship with those entities?

MR. DELBELLO:  Objection, form.

Q.   At the time you received these payments in November of last year, January of this year, did you have any ongoing business relationship with Mr. Gorbach?

**A.   No, I did not.**

Q.   Did you have any ongoing business relationship at that time with any company with which Mr. Gorbach was associated?

**A.   No, I did not.**

Q.   Same with Mr. Collins, did you have any ongoing business relationships with him when you received these payments in November and January?

**A.   No, I did not.**

Q.   Did you have any ongoing business relationship with any entity with which Mr. Collins was associated during those time periods?

**A.   No, I did not.**

Q.   Am I correct then in stating that essentially these payments that you told us about in your interrogatory responses, these were for pre-existing debts that were not related to any ordinary sort of business that you were engaged in

with those entities, correct?

A.    That is correct.

Q.    And the wire transfers that you received, did they go to a personal demand deposit account, checking account or something like that?

A.    My personal checking account.

Q.    Have you ever heard of a person named Jorge Aragon?

A.    Yes, I have.

Q.    Who is that person, to your knowledge?

A.    To my knowledge, he is a gentleman who I found out invested money with Igor last year.

Q.    And how did you learn that information?

A.    From Bill Collins.

Q.    Again, I apologize if I've already asked you this, but do you know where Mr. Gorbach and Mr. Collins got the money that they paid you in November of last year and January of this year?

A.    No, I do not know.

Q.    At this point do they still owe you money?

A.    Yes, they do.

Q.    Can you tell me how much they still owe?

A.    $2.650 million.

Q.    Again, if you know the answer, great.  If you don't, I completely understand.  Do you know

answer if you can.

A. As far as I see it, they are one group.

Q. So your contention is that all three of those --

A. Right.

Q. -- individual Defendants, Mr. Collins, Mr. Maydanskyy and Mr. Gorbach are each responsible for repaying you the total sum of $2.65 million?

MR. DELBELLO: Same objection.

A. Yes.

Q. Okay. And the payments you identified -- I think you already said this, but the payments you identified in your response to Interrogatory 1 reduced balances owed to you by those three individual Defendants, correct?

A. Correct.

Q. And is that why you contend that those payments did not violate the preliminary injunction order?

MR. DELBELLO: Objection to form.

Q. I'll restate it. Fair enough. You state in your interrogatory response, the last two -- I don't know if you have it. I can share it if you don't have it, but I'll just read it and represent that I'm reading accurately the last two sentences.

It says, quote, "These three payments were owed to Mr. Jacobs for transactions independent from and prior to the transaction outlined in the verified complaint, thus Mr. Jacobs did not violate the Preliminary Injunction Order because he did not dissipate any assets, (DKT No. 11.)" Abbreviation for Docket Number 11. Do you understand what that means, those two sentences?

MR. DELBELLO: Objection to form.

Q. You can answer if you understand what the two sentences in your interrogatory responses means.

A. **I do understand.**

Q. What is your understanding of what those --

A. **My understanding is that I was entitled to receive money that was duly owed to me prior to the complaint.**

Q. And the payment of that money in your view does not constitute a violation of the court's order?

A. **That is correct.**

Q. And the payment of that money by Mr. Collins, Mr. Maydanskyy and Mr. Gorbach does not violate the order?

A.   Correct.

Q.   That's all I have.

MR. MARINO:  Jim, do you have anything?

MR. DELBELLO:  No, I don't.

EXAMINATION OF JONATHAN JACOBS

BY MR. MARINO:

Q.   Just real quick.  In terms of, Mr. Jacobs, the loans, November 7th of 2022, February 8th of 2023 for a total of 1.8 million, if you know, what was the purpose of those loans?

A.   I was told that they needed to pay off previous bills that they had to make certain repairs on their premises and to pay for various truck expenses that they had accumulated over the months.

Q.   And were those unsecured loans?

A.   Yes.

Q.   That's all I have.

MR. MARINO:  Does anybody have anything else in light of my questions?

MR. DELBELLO:  Thanks, everybody.

MR. MARINO:  That concludes the deposition.  We would like you to read and sign it. I know you're going on vacation, but if you can take a look at it.  We would just ask the court