| | | |
|---|---|---|
| GRIDKOR, LLC, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. 5:23-cv-03563 |
| v. | : | |
| | : | |
| IGOR GORBACH, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW** this _____ day of _____, 2024, upon consideration of the Motion for Partial Summary Judgment and for Entry of Final Judgment of Plaintiffs GridKor, LLC and GridKor Trucking and Logistics LLC, the Court hereby **GRANTS** said Motion.

Accordingly, **IT IS HEREBY ORDERED** that,

1. summary judgment is **GRANTED** in favor of Plaintiffs and against each of Defendants Igor Gorbach, William Collins, Oleksandr Maydanskyy, Milos Mitic, and Ucha Matcharashvili on Counts X through XIV, respectively, of the Verified Complaint (Doc. 1);

2. the Court finds there is no just reason for delay in entering a final judgment against the above-referenced Defendants on the above-referenced counts; and

3. the Court will **ENTER** final judgments as follows:

   a. On Count X, in favor of Plaintiffs and against Defendant Igor Gorbach in the amount of $6,229,765.81 plus any additional penalties and interest that accrue in the interim between the filing of Plaintiffs' Motion and the entry of judgment and post-judgment interest thereafter;

   b. On Count XI, in favor of Plaintiffs and against Defendant William Collins in the amount of $6,229,765.81 plus any additional penalties and interest that accrue in the

interim between the filing of Plaintiffs' Motion and the entry of judgment and post-judgment interest thereafter;

     c.     On Count XII, in favor of Plaintiffs and against Defendant Oleksandr Maydanskyy in the amount of $6,229,765.81 plus any additional penalties and interest that accrue in the interim between the filing of Plaintiffs' Motion and the entry of judgment and post-judgment interest thereafter;

     d.     On Count XIII, in favor of Plaintiffs and against Defendant Milos Mitic in the amount of $6,229,765.81 plus any additional penalties and interest that accrue in the interim between the filing of Plaintiffs' Motion and the entry of judgment and post-judgment interest thereafter; and

     e.     On Count XIV, in favor of Plaintiffs and against Defendant Ucha Matcharashvili in the amount of $6,229,765.81 plus any additional penalties and interest that accrue in the interim between the filing of Plaintiffs' Motion and the entry of judgment and post-judgment interest thereafter.

**BY THE COURT:**

**JEFFREY L. SCHMEHL, J.**

Dated: _____, 2024

GRIDKOR, LLC, *et al.*,  :
  :
     Plaintiffs,  :
  :  Civil Action No. 5:23-cv-03563
v.  :
  :
IGOR GORBACH, *et al.*,  :
  :
     Defendants.  :

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND ENTRY OF FINAL JUDGMENT

Pursuant to Rules 56 and 54(b) of the Federal Rules of Civil Procedure, Plaintiffs GridKor, LLC and GridKor Trucking & Logistics LLC, by and through the undersigned counsel, hereby move the Court for summary judgment on Counts X through XIV of the Verified Complaint, which counts assert breach of the promissory notes executed by each of Defendants Igor Gorbach (Count X), William Collins (Count XI), Oleksandr Maydanskyy (Count XII), Milos Mitic (Count XIII), and Ucha Matcharashvili (Count XIV). There is no genuine dispute of material fact as to these Defendants' failure to perform under the notes or the amounts owed thereunder.

Further, while the instant Motion does not resolve all of the claims against all of the parties, in light of the delay already occasioned in this case by Defendants' meritless efforts to challenge this Court's jurisdiction and their violation of and disregard for the Preliminary Injunction Order in this case, Plaintiffs submit that there is no just reason for delaying the entry of final judgments on each of Counts X through XIV and Plaintiffs request that the Court do so pursuant to Rule 54(b).

**LEGAL STANDARD**

A court must grant summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a party moving for summary judgment has met its initial burden, the nonmoving party may not rely merely on bare assertions, conclusory allegations, or suspicions, *see Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982), but instead must present "specific facts showing that there is a *genuine issue for trial*," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

"Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996) (internal quotation marks omitted). For elements on which the nonmoving party bears the burden of production, the party must show more than "[t]he mere existence of a scintilla of evidence," but instead must present concrete evidence supporting each essential element of its claim. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cnty. Family YMBA*, 418 F.3d 265, 267 (3d Cir. 2005). Further, a court may not weigh the evidence or make credibility determinations. *Boyle v. Cnty of Allegheny*, 139 F.3d 386,

393 (3d Cir. 1998). However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n. 12 (3d Cir.1990). Further, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record. *Celotex*, 477 U.S. at 322-23. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004). Therefore, if, after making all reasonable inferences in favor of the non-moving party, the Court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiffs submit that there is no genuine dispute of material fact with respect to the following:[1]

1. On or about April 6, 2023, Defendant Maydanskyy signed an agreement purporting to be a "Member" of "MGM Linehaul Inc," a true and correct copy of which is attached hereto as Exhibit 1 ("the April 6 Agreement"). (Verified Compl. ¶¶ 87, 96, 224-25 & Exh. 7 thereto.)

---

[1] Consistent with Section II(C)(4) of the Court's Policies and Procedures, counsel for Plaintiffs reached out to counsel for Defendants Gorbach, Collins, Maydanskyy, Mitic, and Matcharashvili on July 23, 2024, and proposed a joint stipulation of facts and inquired as to Defendants' position. Defense counsel did not respond. Counsel for Plaintiffs followed up on August 16, 2024, and again inquired whether the proposed stipulations were acceptable. Defense counsel did not respond to that email either.

2.     Defendants Gorbach, Collins, Maydanskyy and Mitic further initialed various pages of the April 6 Agreement.  (Exh. 1; Verified Compl. ¶¶ 96, 225.)

3.     On or about April 6, 2023, Defendants Igor Gorbach, William Collins, Oleksandr Maydanskyy, Milos Mitic, and Ucha Matcharashvili each executed a promissory note.  (Exh. 1; Verified Compl. ¶¶ 96, 196, 200, 204, 208, & 212 & Exh. 7 thereto.)

4.     Exhibit C to the April 6 Agreement is a true and correct copy of the promissory note executed by Defendant Igor Gorbach.  (Exh. 1-C; Verified Compl. ¶ 196 & Exh. 7 thereto.)

5.     Exhibit D to the April 6 Agreement is a true and correct copy of the promissory note executed by Defendant William Collins. (Exh. 1-D; Verified Compl. ¶ 200 & Exh. 7 thereto.)

6.     Exhibit E to the April 6 Agreement is a true and correct copy of the promissory note executed by Defendant Oleksandr Maydanskyy.  (Exh. 1-E; Verified Compl. ¶ 204 & Exh. 7 thereto.)

7.     Exhibit F to the April 6 Agreement is a true and correct copy of the promissory note executed by Defendant Milos Mitic.  (Exh. 1-F; Verified Compl. ¶ 208 & Exh. 7 thereto.)

8.     Exhibit G to the April 6 Agreement is a true and correct copy of the promissory note executed by Defendant Ucha Matcharashvili.  (Exh. 1-G; Verified Compl. ¶ 212 & Exh. 7 thereto.)

9.     On or about April 21, 2023, Defendant William Collins sent a wire transfer to Plaintiff GridKor Trucking & Logistics LLC in the amount of $70,000.  (Verified Compl. ¶ 109.)

10.     On or about April 24, 2023, Defendant Igor Gorbach sent a wire transfer to Plaintiff GridKor Trucking & Logistics LLC in the amount of $50,000.  (Verified Compl. ¶ 110.)

11. On or about May 19, 2023, Defendant Oleksandr Maydanskyy sent a wire transfer to Plaintiff GridKor Trucking & Logistics LLC in the amount of $22,000. (Verified Compl. ¶ 111.)

12. Neither Defendants, nor anyone acting on their behalf, made any further payments to Plaintiffs. (Verified Compl. ¶ 112.)

13. Plaintiffs did not exercise the option under the April 6 Agreement to acquire 100% of Xpress Logistics Inc. (Verified Compl. ¶ 89(c) & n.2.)

## ARGUMENT

### A. Defendants Failed to Perform Under the Promissory Notes

As established by the undisputed facts, Defendants Gorbach, Collins, Maydanskyy, Mitic, and Matcharashvili have all failed to perform under the terms of the promissory notes. Plaintiffs were owed the principal sum of $3,500,000, all of which was to be paid on or before July 4, 2023. Plaintiffs, however, received only $142,000.

Specifically, under the April 6 Agreement, "MGM Linehaul Inc."[2] agreed to pay a total of $3.5 million to buy back the 67 percent stake in each of Cha Cha Logistics, Inc., Xpress Logistics, Inc., Victoria Logistics, Inc. and HEB Logistics, Inc. by:

    a. paying a deposit of $300,000 on or before April 16 or 20, 2023[3];

    b. paying an additional amount of $1,700,000 on or before July 4, 2023, for Plaintiffs' interest in Cha Cha, Victoria, and HEB; and

---

[2] MGM Linehaul Inc. did not exist, nor did any similarly-named entity. (Verified Compl. ¶¶ 17, 129; Exh. 2 [2/28/24 I. Gorbach Answers to Requests for Admission].)

[3] The Agreement references in two places the obligation to make a $300,000 initial payment "on or before April 16, 2023," but in the second place Defendant Collins handwrote an "X" over the 16 and wrote "20" above it and initialed next to the change. Defendant Collins, however, did not make such a change in the other place were the deadline of April 16, 2023 is identified.

c.      paying an additional amount of $1,500,000 for Plaintiffs' interest in Xpress on or before July 4, 2023, if Plaintiffs did not exercise a 30-day option to also take 100 percent of Xpress.

(Exh. 1 at pp. 1-2). In the event MGM failed to timely make the initial payment of $300,000, the April 6 Agreement provided that "MGM shall be liable to pay Gridkor a penalty of $50,000 per week, effective on April 16, 2023." (Exh. 1 at p. 2.) In the event MGM failed to timely make the Additional Payment(s), the April 6 Agreement provided that "MGM shall be liable to pay Gridkor a penalty of $150,000 per month, effective on day 91 (July 5, 2023) …." (Exh. 1 at p. 2.)

Under the heading "Personal Guarantee," the April 6 Agreement further provided that "[i]n consideration of GridKor entering into this Agreement with MGM, the undersigned individual(s) (the 'Guarantor(s)') hereby unconditionally and irrevocably guarantee(s) the full, prompt, and complete performance by MGM of all its present and future obligations, financial or otherwise, arising under this Agreement, including but not limited to the payment of the deposit, additional consideration, and any penalties as set forth herein, as well as the payment of any other amounts owed by MGM to GridKor …." (Exh. 1 at p. 5.) The April 6 Agreement made clear that "[t]he Guarantor(s)' liability under this personal guarantee shall be joint and several, if there are multiple Guarantors, and shall be absolute and unconditional, without regard to the validity, regularity, or enforceability of the Agreement or the promissory note, or any other circumstances that might otherwise constitute a legal or equitable discharge or defense of a guarantor." (Exh. 1 at p. 5.)

In the five promissory notes, Defendants Gorbach, Collins, Matcharashvili, Maydanskyy, and Mitic each:

a.      "unconditionally promise[d] to pay to the order of GridKor, LLC ('Payee'), the principal sum of three million five-hundred thousand dollars ($3,500,000.00),

together with any accrued and unpaid interest, in accordance with the terms and conditions set forth in [the April 6 Agreement] between GridKor, LLC and MGM Linehaul Inc.'";

b.  "agree[d] to pay the principal sum and any accrued and unpaid interest according to the payment schedule and other terms and conditions specified in the Agreement" and do so "without set-off or counterclaim";

c.  agreed to pay interest "at a rate of 9% per annum, calculated on the basis of a 365-day year for the actual number of days elapsed";

d.  agreed that "[p]enalties as described in the agreement above will be added into the final number if target dates are missed or violation of non-solicitation";

e.  agreed that if any payment is not made when due or any obligation under the note or the April 6 Agreement is not performed, Plaintiff "may, at its option, declare the entire unpaid principal balance, together with all accrued and unpaid interest, immediately due and payable without presentment, demand, protest, or notice of any kind, all of which are hereby expressly waived"; and

f.  agreed that upon any default, Plaintiff "shall have all rights and remedies available under the Agreement, this Promissory Note, and applicable law, including but not limited to the right to recover any costs, expenses, and reasonable attorneys' fees incurred in connection with the collection or enforcement of this Promissory Note."

(Exh. 1-C, 1-D, 1-E, 1-F, & 1-G.)

Only three payments were ever made toward these obligations: Defendant Collins paid $70,000 on April 21, 2023; Defendant Gorbach paid $50,000 on April 24, 2023; and Defendant

7

Maydanskyy paid $22,000 on May 19, 2023. (SOF ¶¶ 9-12.) The remainder of the obligations under the April 6 Agreement and the promissory notes remain unsatisfied.

### B. The Outstanding Balance of the Promissory Notes Is $6,229,765.81

As of the date of this filing, the total due under the notes is $6,229,765.81, comprised of the following components and calculated as set forth:

| Component | Calculation | Amount |
|---|---|---|
| Outstanding Principal | $3,500,000 less $142,000 payments | $3,358,000 |
| Interest on Principal (9% per annum) | $300,000 balance for 1 day (4/21/23) | $73.97 |
| | $230,000 balance for 3 days (4/22 to 4/24/23) | $170.14 |
| | $180,000 balance for 25 days (4/25 to 5/19/23) | $1,109.59 |
| | $158,000 balance for 46 days (5/20 to 7/4/23) | $1,792.11 |
| | $3,358,000 balance for 415 days (7/5/23 to 8/23/24) | $343,620 |
| Penalties | Failure to Pay $300,000 by 4/20/23 ($50,000 x 10 weeks) | $500,000 |
| | Failure to Pay $3,500,000 by 7/4/23 ($150,000 x 13.5 months) | $2,025,000 |
| **TOTAL:** | | **$6,229,765.81** |

### C. There Is No Basis for the Court to Refuse to Enforce the Promissory Notes

Defendants have not, and cannot, dispute that they executed the promissory notes on which Counts X through XIV are premised. Their attorney, however, has suggested (without providing any actual evidence) that the notes are unenforceable because they "were extracted through duress" and/or were not supported by consideration. (*See* Doc. 34 ¶¶ 46-52, 57-58.) Such contentions are affirmative defenses on which Defendants bear the burden of production and proof. There is no evidence in the record to support Defense counsel's previous assertions. To avoid summary judgment on the basis of such affirmative defenses, Defendants must show more than "[t]he mere

existence of a scintilla of evidence," but instead must present concrete evidence supporting each essential element of its claim. *Anderson,* 477 U.S. at 252. They have not, and cannot, do so. In fact, none of them have even asserted duress or lack of consideration as an affirmative defense to the notes or any other claim. Defendants Gorbach, Collins, and Maydanskyy have yet to even file answers, despite the Court having ordered they do so by August 14, 2024. (Doc. 84.) Only Defendant Mitic even filed a timely answer, and he did not assert duress or lack of consideration as affirmative defenses. (Doc. 85 at 25.) Defendant Matcharashvili filed an answer two days after the deadline, but he similarly did not assert either affirmative defense. (Doc. 87 at 25.)

Further, the evidence in the record establishes no factual basis for either contention. Plaintiffs and Defendants negotiated the April 6 Agreement over the course of several days, exchanging multiple versions of the document. No one threatened anyone, and when Defendant Maydanskyy suggested he have lawyers review the agreement, Plaintiffs readily agreed to send the document to his lawyers. Mr. Maydanskyy, however, demurred and decided not to take Plaintiffs up on their offer. (*See* Doc. 41-1, 10/25/2023 M. Bryant Decl. ¶¶ 9-13.) Indeed, Defendant Collins has confirmed, under oath, that he believed the promissory notes to be legitimate and the only basis for the suggestion of duress is that, according to Mr. Collins, at some unidentified point in the negotiations of the April 6 Agreement, Messrs. Bryant and Tobin "told us that they weren't getting up from a room and leaving until we all signed the piece of paper saying that we owned --- owed X amount of dollars." (Exh. 3, 7/22/2024 W. Collins Depo. Tr. at 40:8 – 41:8.) Mr. Collins admits none of Messrs. Bryant or Tobin physically threatened anyone, or made any threat at all other than saying they would not leave. (*Id.* at 41:20 – 42:16.)

"[T]o raise the defense of duress, a party must prove three elements: (1) a wrongful threat; (2) fear that induces a loss of free will and judgment; and (3) that there was no immediate legal

9

remedy available as an alternative to executing the agreement." *Hotel Employees & Rest. Employees Union v. Sage Hospitality Res., L.L.C., Local 57*, 299 F. Supp. 2d 461, 466 (W.D. Pa. 2003) *aff'd sub nom. Hotel Employees & Rest. Employees Union, Local 57 v. Sage Hospitality Res., LLC*, 390 F.3d 206 (3d Cir. 2004). Mr. Collins' claim that Messrs. Bryant and Tobin said, at some point, they would not leave are insufficient as a matter of law to support a viable defense of duress. *See, e.g.*, *Radon Construction, LLC v. Land Endeavor 0-2, Inc.*, 221 A.3d 654, 659-62 (Pa. Super. Ct. 2019) (affirming summary judgment ruling rejecting duress defense where defendant claimed coercion as a result of alleged statement that "if he left the meeting without signing the changed contract, the project would stop moving forward"). Defense counsel's prior unsworn assertions that "Plaintiffs" (without indicating who) were "very loud, and demonstrative" (Doc. 34 ¶ 47), they stated they were not leaving unless Defendants "complied with their demands" (*id.* ¶ 49), and that, at some unidentified prior time and location, Mr. Bryant "had threatened one of the defendants that Igor Gorbach should 'be careful' and do as Plaintiffs demanded or else bodily harm would befall Mr. Gorbach." (*Id.* ¶ 50.) There is not even an allegation of an actual threat, much less an "wrongful threat" on April 6. Just a vague, undetailed, and unsworn characterization of some prior statement by Mr. Bryant. None of this is true or supported by evidence, but even if it were it would not establish duress.

To the extent Defendants attempt to argue the promissory notes are not supported by consideration, any such argument completely ignores the fact that the April 6 Agreement was to result in "MGM Linehaul Inc." holding 100 percent ownership of four companies, allowing "MGM Linehaul Inc." to keep at least $1,441,037.18 of the money Plaintiffs had caused to be sent to them, and "MGM Linehaul Inc." potentially keeping $1.5 million more if they could increase the value of Xpress Logistics Inc. enough for Plaintiffs to exercise an option on that company.

(*See* Exh. 1.)  Personal guarantees by owners or employees of the company that stands to benefit from an agreement are clearly supported by consideration.  *See, e.g.*, *Hennessey v. Rom*, No. 389 WDA 2014, 2015 WL 7456008 at *4 (Pa. Super. March 20, 2015) (rejecting defendant's argument his personal guarantee was not supported by consideration "since he was a consulting or employee and shareholder" of entity which was to financially benefit from agreement so guaranteed).

Moreover, the April 6 Agreement made clear that "[t]he Guarantor(s)' liability" was to be "absolute and unconditional, without regard to the validity, regularity, or enforceability of the Agreement or the promissory note, or any other circumstances that might otherwise constitute a legal or equitable discharge or defense of a guarantor."  (Exh. 1 at p. 5.)

Accordingly, Defendants have not asserted and have waived any suggestion of a claim of duress or lack of consideration, and even if they had not, there is no evidence creating any genuine factual dispute with respect to such claims.

**D.      The Court Should Enter Final Judgments on Counts X through XIV**

The decision whether or not to certify under Rule 54(b) "is left to the sound judicial discretion of the district court," *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 466 U.S. 1, 8 (1980) (citation omitted), because the district court is the court "'most likely to be familiar with the case and with any justifiable reasons for delay.'"  *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956).  As such, Rule 54(b) certification requires two separate conditions: "(1) there has been a final judgment on the merits, i.e., an ultimate disposition on a cognizable claim for relief; and (2) there is 'no just reason for delay.'"  *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 202 (3d Cir. 2006) (quoting *Curtiss-Wright*, 446 U.S. at 7-8).  In considering whether to grant a motion for certification under Rule 54(b), the Third Circuit has articulated factors that the district courts should consider:

(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Berckeley*, 455 F.3d at 203 (quoting *Allis-Chalmers Corp.*, 521 F.2d at 364).

Here, the claims under the promissory notes stand apart from the remaining claims as they reflect clear, specific contractual obligations on the part of the five Defendants who executed the notes. The other claims in the case involve matters of equity, fraud, and conspiracy, implicating different types of facts and legal matters. As such, Counts X through XIV reflect a distinct subset of the claims in the case separable from the other claims and counterclaims. While there may be some factual overlap in terms of background, adjudication of the other claims will focus on different points and issues.

Further, none of Defendants Gorbach, Collins, Maydanskyy, Mitic, and Matcharashvili have asserted any counterclaim that could present any question of a future set-off.

Finally, and in this case most significantly, Defendants conduct in this case and their repeated failures to respond to discovery, file timely pleadings, and comply with the Court's Preliminary Injunction Order raise substantial concerns that delay will impede Plaintiffs' ability to collect on these or any judgments. Plaintiffs' contemporaneously-filed Motion for Order to Show Cause details as many as 29 instances of Defendants Gorbach and Collins transferring assets in violation of the Preliminary Injunction Order (transactions in which Defendants Maydanskyy and Matcharashvili also were involved). (*See* Doc. __, incorporated by reference herein.) Further, as detailed in Plaintiffs' Memorandum supporting their request for a TRO and preliminary injunction, Defendants have a history of moving assets between a multitude of companies with

12

frequency, often concealing the ownership and/or control of those entities. (*See* Doc. 6 at 4-5, incorporated by reference herein.) Defendants have already succeeded in delaying the commencement of the merits portion of this case by filing a baseless motion to dismiss for lack of subject matter jurisdiction. Any further delay presents the potential to imperil Plaintiffs ability to collect on the judgments, or at the very least give Defendants even more time to make it even more difficult for Plaintiffs to do so. Such considerations are more than sufficient to support a finding of no just reason for delay. *See Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 951 (7th Cir. 1980) (holding delay's potential to prejudice plaintiff's ability to collect justified Rule 54(b) certification); *Stern v. Ghent*, No. 3:20-cv-01919, 2021 WL 4193074, at *2 (D. Conn. Sept. 15, 2021) (entering final judgment on contract and breach of guaranty claims finding them "separable" and "extricable" from fraud, misrepresentation, unfair trade practices claims, and conspiracy claims and no reason to delay plaintiff in judgment-collection activities against contractual obligors and guarantors); *Ellis v. Jacobs*, No. 13 Civ. 0985, 2013 WL 6405163, at *1 (S.D.N.Y. Dec. 3, 2013) (explaining counterclaim should not prevent plaintiff from efforts to collect on a conceded or established debt and Rule 54(b) certification appropriate in such circumstances); *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 353 (S.D.N.Y. 2013) (Rule 54(b) certification appropriate in light of concerns regarding the defendant's solvency and that "further delay will only increase the likelihood that any judgment will not be collectible").

## CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully request that the Court grant summary judgment to Plaintiffs and against Defendants Gorbach, Collins, Maydanskyy, Matcharashvili, and Mitic on Counts X through XIV of the Verified Complaint and that the Court enter final judgment on those five counts pursuant to Rule 54(b).

Dated:  August 26, 2024

Respectfully submitted,

**MARINO FINLEY LLP**

/s/ Daniel Marino
Daniel Marino (PA38892)
dmarino@marinofinley.com
Tillman J. Finley (*pro hac vice*)
tfinley@marinofinley.com
818 Connecticut Avenue, N.W., Suite 801
Washington, DC  20006
(202) 223-8888

*Counsel for GridKor, LLC, GridKor Trucking
& Logistics LLC*

14

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 26, 2024, I caused a copy of the foregoing and all attachments thereto was served upon the following counsel of record for Defendants via ECF:

James E. DelBello
James Mangiaracina
POLSINELLI PC
1717 Arch Street, Suite 2800
Philadelphia, PA  19103
jdelbello@polsinelli.com
jmangiaracina@polsinelli.com

*Counsel for Defendant Jonathan Jacobs*

Jeffrey D. Bukowski, Esquire
SMITH BUKOWSKI, LLC
JBukowski@SmithBukowski.com
1050 Spring Street, Suite 1
Wyomissing, PA  19610
(610) 685-1600

*Counsel for Defendants Igor Gorbach,
William Collins, Oleksandr
Maydanskyy, Ucha Matcharashvili,
Milos Mitic, and Pavlo Tupychak*

/s/ Daniel Marino