IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRIDKOR, LLC , et al. | : CIVIL ACTION |
| | : |
| | : |
| v. | : NO. 23-3563 |
| | : |
| IGOR GORBACH, et al. | : |

MEMORANDUM

SCHMEHL, J.    /s/ JLS                                                                  SEPTEMBER  26, 2024

Presently before the Court is the motion of the Defendants for reconsideration of an Order entered by the late Honorable Edward G. Smith[1] granting the Plaintiff's motion for a preliminary injunction and ordering a prejudgment freeze of the Defendants' assets. For the reasons that follow, the motion is denied.

**THE VERIFIED COMPLAINT**

On September 14, 2023, Plaintiffs, two limited liability companies, filed a Verified Complaint, claiming the Defendants[2] induced Plaintiffs to enter into a Stock Purchase Agreement ("SPA") with a fictitious entity purportedly called "MGM Linehaul Inc.," "MGM Linehaul Consulting, Inc.," and/or "MGM Linehaul Consulting" (collectively "MGM") pursuant to which Plaintiffs paid Defendants the sum of $4,941,179.18 to purchase a 67% majority ownership interest in each of five Pennsylvania trucking companies. (Verified Compl. ¶¶ 1, 55, 56.) Plaintiffs allege that Defendants represented to them that

---

[1] This case was originally assigned to the late Honorable Edward G. Smith. Upon Judge Smith's untimely passing, it was reassigned to the docket of the undersigned on November 30, 2023. [ECF 50.]
[2] Named as Defendants are Igor Gorbach ("Gorbach"), William Collins ("Collins"), Oleksandr Maydanskyy ("Maydanskyy"), Ucha Matcharashvili ("Matcharashvili"), Milos Mitic ("Mitic"), Pavlo Tupychak ("Tupychak") and Jonathan Jacobs ("Jacobs").

1

the five companies operated a total of 35 trucks or linehaul routes for FedEx Ground Package System, Inc ("Fed Ex") and that each of the trucking routes were guaranteed and were producing, and would continue to produce, net profits equal to 20% of revenue which would result in a monthly distribution payment to Plaintiffs in the amount of $242,500. (Verified Compl. at ¶¶ 21, 22, 30, 38, 48, 49, 50, 53, 54.) Plaintiffs allege that "[t]hree months after closing, Defendants had failed to deliver five companies collectively operating either 35 trucks or 35 FedEx runs, much less the established, performing trucks and runs Defendants had represented the companies had. Further, Defendants had yet to make the promised monthly net profit distribution of $242,500 even once, the gross revenues of all five companies were well below where they had been, what revenue the companies had was being consumed by unexplained expenses that appeared unrelated to the operations of these five companies, and Defendants appeared no closer to fixing any of this than they had been in January." (Verified Compl. ¶ 83.) According to the Complaint, Defendants "were, in fact, running some or all of the routes that were supposed to be performed by the [five trucking companies] *through other companies owned and/or controlled by Defendants*, thereby redirecting the revenues and profits from those trucking routes to themselves." (Verified Compl. ¶ 75.) (emphasis in original.)

On April 6, 2023, Plaintiffs entered into a new agreement (the "April 6th Agreement") with MGM pursuant to which MGM was to return $3.5 million to Plaintiffs over time in return for Plaintiffs agreeing to relinquish their majority ownership interest in four of the trucking companies, but absorbing 100 percent ownership of the fifth company, PSI Logistics Inc. ("PSI") (Verified Compl. ¶ 88.) This agreement was backed

up by promissory notes allegedly executed by Defendants Gorbach, Collins, Maydanskyy, Matcharashvili, and Mitic. However, according to the Complaint, neither MGM nor Defendants abided by the terms of the April 6th Agreement, returning only $142,000 to Plaintiffs. (Verified Compl. ¶¶ 88-98;113.)

The Complaint further alleges that Defendants "operated all five of the trucking companies they had purported to sell to Plaintiffs in violation of numerous legal and contractual requirements; that Defendant Gorbach (and possibly others) had been the subject of investigations by FedEx; that Defendants' use of 'MGM' was an effort to conceal the involvement of Defendant Gorbach and others from FedEx; and that Defendant Mitic and one or more of the five companies were under investigation by FedEx. FedEx ultimately suspended all five companies and terminated the routes of all five companies," including those with PSI which Plaintiffs had just purchased from the Defendants. (Verified Compl. at ¶ 5.) According to the Complaint, Defendants ultimately transferred the $4,941,179.18 to various accounts controlled by them and the Defendants failed to deliver or produce any profits or distributions to Plaintiffs or to return to Plaintiffs anything more than $142,000.

Plaintiffs have asserted counts for unjust enrichment against all Defendants (Count I), civil conspiracy against all Defendants (Count II), fraud against Defendant Gorbach (Count III), fraud against Defendant Collins (Count IV), fraud against Defendant Matcharashvili (Count V), fraud against Defendant Maydanskyy (Count VI), fraud against Defendant Mitic (Count VII), fraud against Defendant Tupychak (Count VIII), fraud against Defendant Jacobs (Count IX), enforcement of a promissory note against Defendant Gorbach (Count X), enforcement of a promissory note against

Defendant Collins (Count XI), enforcement of a promissory note against Defendant Maydanskyy (Count XII), enforcement of a promissory note against Defendant Mitic (Count XIII), enforcement of a promissory note against Defendant Matcharashvili (Count IV), violation of Pennsylvania Securities Act against all Defendants (Count XV) and alter ego liability for breach of contract against all Defendants except Jacobs (Count XVI).

## PROCEDURAL HISTORY

On September 14, 2023, the Clerk issued Summons to the Defendants. [ECF 4.] On September 15, 2023, Plaintiffs filed a motion for a temporary restraining order ("TRO") and for a preliminary injunction. [ECF 5.] On that same day, Judge Smith issued an Order scheduling a telephonic conference on the motion for a TRO for September 18, 2023. [ECF 7.]

On September 17, 2023, Plaintiffs' counsel filed an affidavit in which he averred that he had personally served on Defendants Gorbach, Collins, and Maydanskyy the Verified Complaint, the Summons, Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (with attachments) and Plaintiff's Memorandum in Support of Motion for Temporary Restraining Order (with attachments). [ECF 8.]

Plaintiffs attached to their Memorandum in support of their Motion for a TRO and Preliminary Injunction the affidavit of Plaintiff GridKor, LLC's President, Michael Bryant ("Bryant"). In his affidavit ("Bryant Affidavit"), Bryant averred:

> 2. In a meeting on January 17, 2023, Mr. Gorbach and Mr. Maydanskyy stated that the money GridKor had paid them 'is completely gone.' They specifically stated that $950,000 of the funds were taken by Mr. Jacobs and that they had taken $800,000 for themselves. They did not give a full accounting of the rest of the funds, but generally stated they had used the money to buy trucks, repair trucks, and buy out investors or partners in other businesses.

4

> 3. In the months following our payments to Defendants, we observed and were told that Mr. Gorbach had bought a new Lexus automobile, and that Mr. Maydanskyy had bought or done improvements to a house and purchased at least two luxury vehicles (a BMW 7 series and a Range Rover).
>
> 4. In addition, Mr. Gorbach has stated during the course of conversations that he owns real estate in Philadelphia, but he has put it in someone else's name so as to protect the asset.
>
> 5. Mr. Gorbach has also made multiple statements about owning large amounts of land in Ukraine, though he has not been specific about the name(s) under which such assets are held.
>
> 6. When we questioned the lack of results and the minimal performance of the five companies we had purchased in December 2022, Mr. Gorbach, Mr. Maydanskyy and Mr. Collins stated that they needed to move trucks and runs between companies in order for our companies to perform as they had promised, explaining that they did this all the time.
>
> 7. In the wake of FedEx's actions terminating that work, Mr. Gorbach, Mr. Maydanskyy and Mr. Collins have each admitted that they presently intend to buy another company, called "Top Notch," and they intend to transfer assets, including trucks, to that entity.
>
> 8. On August 29, 2023, Mr. Gorbach indicated to us that he is making plans, possibly in conjunction with other investors, to take control of as many as twelve other trucking companies.

[ECF 6-1.]

Following an on-the-record telephonic proceeding on September 18, 2023 in which Plaintiffs' counsel participated but not one of the Defendants nor any counsel on their behalf participated, Judge Smith entered an Order in which he noted the status of the case at the time he considered Plaintiff's motion for a preliminary injunction by writing that "after considering the complaint, motion for a temporary restraining order

and a preliminary injunction against the defendants, and supporting memorandum of law filed by the plaintiffs, GridKor, LLC and GridKor Trucking and Logistics LLC (Doc. No. 5); and after an on-the-record telephonic proceeding on the motion held today during which counsel for the plaintiffs were present, but neither the defendants nor any counsel acting on their behalf were present; and the court finding that the plaintiffs' counsel demonstrated that they provided the defendants with sufficient notice of today's telephonic proceeding, in accordance with the court's September 15, 2023 Order (Doc. No. 7); and the defendants having failed to participate in today's proceeding despite receiving this notice from the plaintiffs' counsel…" [ECF11.]

      The transcript of the hearing reflects that on September 15, 2023, Plaintiffs' counsel sent to each of the Defendants by email a copy of Plaintiff's motion for a temporary restraining order and for preliminary injunction, the summonses and the Verified Complaint and by separate email a copy of the Judge Smith's Order scheduling a conference call for September 18, 2023. (ECF 82, p.4.) On Saturday, September 16, 2024, Plaintiffs' Vice-President, Paul Tobin, forwarded counsel's previous two emails to each Defendant. *Id*. at 5. Counsel also spoke over the phone with Defendants Matcharashvili and Maydanskyy about the scheduled hearing and again emailed Defendant Matcharashvili a copy of his previous two emails. *Id*. at 6-7. Judge Smith also stated on the record that he found "there has been adequate notice to the adverse party." *Id.* at 16. Judge Smith also noted that "time" was an issue and there was a need to take "urgent action" in order to prevent irreparable harm to Plaintiffs. *Id.* at 21, 23.

      Judge Smith then found that Plaintiffs had satisfied the four elements necessary to obtain a preliminary injunction, specifically stating that "the plaintiffs have

**6**

demonstrated (1) a prima facie case of success on the merits of the claims asserted in their complaint; (2) that they will suffer irreparable harm if immediate injunctive relief is granted; (3) that the defendants will not suffer greater harm if injunctive relief is granted; and (4) that entry of an injunction is in the public's interest." *Id.*

Judge Smith then froze Defendants' assets on an interim basis as follows:

> The defendants, Igor Gorbach, William Collins, Oleksandr Maydanskyy, Ucha Matcharashvili, Milos Mitic, Pavlo Tupychak and Jonathan Jacobs, along with their agents, representatives, servants, employees, affiliates, successors, or assigns, and any person or entity acting on their behalf or in concert or participation with them, are hereby ENJOINED from transferring, assigning, conveying, encumbering, pledging, or otherwise disposing of any interest in real, personal, or intangible property outside the ordinary course of business or ordinary uses to pay household expenses until $4,941,037.18 is placed in escrow with the court or adequate security in favor of the plaintiffs is otherwise posted by the defendants and proof thereof is provided to counsel for the plaintiffs and filed with the court[.]

*Id.*[3]

Finally, Judge Smith directed the Plaintiffs to deposit with the clerk of court the amount of $25,000.00 as bond within 30 days of the date of the Order. *Id.*

On September 25, 2023, counsel entered his appearance on behalf of Defendant Jacobs. [ECF 13.] On that same day, counsel for Jacobs filed a motion for reconsideration of the Court's preliminary injunction entered on September 18, 2023. [ECF 14.] Also on September 25, 2023, a Return of Summons by Plaintiffs on Defendant Mitic was filed. [ECF 15.] Finally, on September 25, 2023, Judge Smith held a telephonic conference on Defendant Jacobs' motion for reconsideration. [ECF 16.]

---

[3] Judge Smith declined Plaintiffs' request that Defendants provide "bi-monthly accounting of expenses paid in the ordinary course of business or ordinary use to pay household expenses." [ECF 11, p.3 n.1.]

7

On September 26, 2023, Judge Smith issued an Order stating that "[i]f the additional defendants wish to file motions and memoranda of law for reconsideration of the preliminary injunction, they shall do so no later than Friday, September 29, 2023" and announcing that "[t]he court will hold a hearing on the defendants' motions for reconsideration of the court's order of preliminary injunctive relief (Doc. No. 11) on Friday, October 13, 2023." [ECF 17.]

On October 2, 2023, counsel Andrew Ralston, Jr, Esq. entered his appearance on behalf of Defendants Gorbach, Collins, Maydanskyy, Mitic, Tupychak and Matcharashvili. [ECF 18-24.] On October 12, 2023, Attorney Ralston filed the motion for reconsideration of the Court's preliminary injunction entered on September 18, 2023 that is currently under consideration by the Court. [ECF 34.]

Meanwhile, counsel for Plaintiffs and counsel for Jacobs resolved Jacobs' motion for reconsideration of the September 18, 2023, preliminary injunction order with regard to Jacobs only. As a result, Judge Smith issued an Order modifying the original preliminary injunction order of September 18, 2023, in part, as follows:

> Jacobs, along with his agents, representatives, servants, employees, affiliates, successors, or assigns, and any person or entity acting on his behalf or in concert of participation with him, is hereby ENJOINED from agreeing to or effecting any transfer, assignment, conveyance, encumbrance, pledge, or other disposition of any interest in real, personal, or intangible property that would have the effect of reducing Jacobs' net worth below $837,500, which represents his maximum potential liability in the event the plaintiffs were to prevail on count I for unjust enrichment (the sole count of the complaint at issue in the plaintiffs' motion for a preliminary injunction), without first obtaining leave of court upon a properly noticed motion;

ECF 26.

On November 16, 2023, Attorney Ralston filed a motion to withdraw as counsel [ECF 46], which this Court granted as unopposed on January 5, 2024. [ECF 60.] On January 31, 2024, Attorney Jeffrey D. Bukowski entered his appearance on behalf of all Defendants except Jacobs. [ECF 61.] On July 16, 2024, Attorney Bukowski filed a motion to withdraw as counsel. [ECF 78.] On August 26, 2024, Plaintiffs filed a motion to show cause why the Defendants should not be held in contempt for violating the September 18, 2023 Preliminary Injunction Order. [ECF 89.] Plaintiffs also filed a motion for partial summary judgment and a request for entry of final judgment [ECF 90.] The Court scheduled a hearing on these motions along with Attorney Bukowski's motion to withdraw for September 4, 2024.

None of the Defendants nor any witnesses appeared at the hearing on September 4, 2024 and the Court heard argument from both sides. Attorney Bukowski requested that the Court issue a ruling on Defendants' motion for reconsideration of the September 18, 2023 Preliminary Injunction Order. The Court granted Attorney Bukowski's motion to withdraw as unopposed and directed Defendants (except Jacobs) to secure new counsel by September 23, 2024. [ECF 98.] The Court also directed the Defendants to file a response to the Plaintiffs' motions by September 23, 2024. [*Id.*]

**STANDARD OF REVIEW**

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). Reconsideration is proper where the moving party demonstrates one of three grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for

9

summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999)  Motions for reconsideration "may not be used 'as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.' " *Johnson v. Diamond State Port Corp.,* 50 F. App'x 554, 560 (3d Cir.2002) (quoting *Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240 (D.Del.1990)); *see also Rock v. Voshell,* No. 05-1468, 2005 WL 3557841, at *1 (E.D.Pa. Dec.29, 2005) ("Mere dissatisfaction with the Court's ruling is not the basis for such a reconsideration, nor can such a motion be used as a means to put forth additional arguments which could have been made but which the party neglected to make."). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Cont'l Cas. Co. v. Diversified Indus., Inc.,* 884 F.Supp. 937, 943 (E.D.Pa.1995).

At the outset, the Court notes that Defendants' motion for reconsideration is a motion for reconsideration in name only. The motion does not set forth the standard for reconsideration (or argue that Defendants have satisfied any of the three recognized grounds for reconsideration and is basically a belated response to Plaintiff's original motion for a temporary restraining order and preliminary injunction.

Defendants' motion for reconsideration asserts a number of reasons why the September 18, 2023 Preliminary Injunction should not have been entered but the reasons ignore the fact that the sole count of the complaint at issue in the Plaintiffs' motion for a preliminary injunction is Plaintiffs' claim for unjust enrichment. [ECF 26.][4] In

---

[4] For example, Defendants argue that the Court lacks subject matter jurisdiction over this case because there is a lack of complete diversity between all the Plaintiffs and all the Defendants, an argument the

**10**

addition, Defendants' arguments are all based on the unsubstantiated allegations of Defendants' former counsel, Attorney Ralston. Defendants have not submitted **any** evidence in general nor any evidence to contradict the averments of the Bryant Affidavit in particular. However, out of an abundance of caution, the Court will provide more insight into why the decision of Judge Smith to enter a preliminary injunction was proper.

### PRELIMINARY INJUNCTION STANDARD

Courts apply one standard when considering whether to issue interim injunctive relief, regardless of whether a petitioner requests a temporary restraining order ("TRO") or preliminary injunction. *See Ellakkany v. Common Pleas Court of Montgomery Cnty.*, 658 Fed.Appx. 25, 27 (3d Cir. 2016) (applying one standard to a motion for both a TRO and preliminary injunction). A "[p]reliminary injuncti[on] ... is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). Plaintiff bears the burden of establishing it is "likely to succeed on the merits ...[,] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

---

Court rejected in a recent Memorandum and Order (ECF 75, 76); that the Promissory Notes were signed only by Defendant Maydanskyy and also were the product of duress and a lack of consideration from the Plaintiffs; that Plaintiffs' unjust enrichment claim is really a legal claim disguised as an equity claim and that the allegations in the Complaint are predicated on a series of "meritless false claims." [ECF 34 at pp. 2-18.]

The first two factors are "gateway factors" and are "most critical." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017). If these gateway factors are met, a court then considers the remaining two factors. *Id*. "A plaintiff's failure to establish any element in [its] favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. VitMar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

## DISCUSSION

"To establish a likelihood of success on the merits, a movant must produce sufficient evidence to satisfy the essential elements of the underlying cause of action." *Borough v. Middletown Water Joint Venture LLC*, No. 18-861, 2018 WL 3473972, at *5 (M.D. Pa. July 19, 2018). "[T]he movant need only prove a 'prima facie case,' not a 'certainty' [the movant will] win." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001)).

The only claim in Plaintiffs' Verified Complaint that is the subject of the Plaintiffs' motion for a preliminary injunction is for unjust enrichment (Count I). [ECF 26.] A claim for unjust enrichment is an equitable claim. See *Symphony FS Limited v. Thompson*, No. 5:18-cv-3904, 2018 WL 6715894, at *8-9 (E.D. Pa. Dec. 20, 2018); *JRNA, Inc. v. Snow*, No. 07-cv-01995, 2007 WL 2253493 at *3 (E.D. Pa. Aug. 3, 2007); *Allstate Ins. Co. v. Davidson Medical Group*, No. 01-5938, 2004 WL 2357797 at *2 (E.D. Pa. Oct. 18, 2004); *F.T Int'l Ltd. v. Mason*, No. 00- 5004, 2000 WL 1514881 at *1 (E.D. Pa. Oct. 11, 2000). The Court supports Judge Smith's conclusion that Plaintiffs are likely to succeed on their unjust enrichment claim.

In order to state a claim for unjust enrichment under Pennsylvania law, Plaintiffs must demonstrate that: (1) a benefit was conferred on the defendant; (2) the defendant retained that benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying full value for it. *Schenck v. K.E. David, Ltd.,* 446 Pa.Super. 94, 666 A.2d 327, 328 (1995). In addition, "[u]njust enrichment claims under Pennsylvania law fall into one of two categories: (1) a quasi-contract theory of liability, where the unjust enrichment claim is brought as an alternative to a breach of contract claim; or (2) a "companion" theory of liability, where the unjust enrichment claim is a companion to a tort claim and seeks to divest the defendant of a benefit obtained by committing the tort." *Symphony FS Ltd.*, 2018 WL 6715894, at * 9.

Under the first theory, unjust enrichment as quasi-contract, an unjust enrichment claim may be pled as an alternative to a breach of contract claim. *Id*. citing *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. Ct. 2009) "'A quasi-contract theory is 'typically invoked ... when [the] plaintiff seeks to recover from [the] defendant for a benefit conferred under an unconsummated or void contract.'" *Id*. quoting *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999). Here, the Plaintiff's unjust enrichment claim is mainly based on a quasi-contract theory.[5]

---

[5] Plaintiffs also allege, in the alternative, a companion theory of unjust enrichment to a tort claim. Specifically, Plaintiffs allege that "should a valid company by the name of 'MGM Linehaul Consulting' or 'MGM Linehaul Inc.' actually exist and should Defendants have had actual authority to act on behalf of such company, Defendants obtained the benefits conferred by Plaintiffs through tortious conduct (i.e., material misrepresentations and omissions about themselves and the operations, performance, and assets of the companies they purported to sell to Plaintiffs) and they should not be permitted to keep the benefit of their tortious conduct." Compl. ¶ 132. However, since the Court concludes that Plaintiffs are entitled to a preliminary injunction on the quasi-contract theory of unjust enrichment, the Court will not address the alternative theory.

Plaintiffs argue that, because they contend that MGM is a sham entity, the Stock Purchase Agreement (as well as the other agreements with MGM) were void from the onset. Compl. ¶ 129. Therefore, Plaintiffs seek to recover the sum of $4,941,179.18 that they claim they conferred on Defendants pursuant to the void agreements without receiving anything of commensurate value in return except for the sum of $142,000. Plaintiffs have clearly satisfied the elements for establishing a prima facie case of unjust enrichment based on a quasi-contract theory.

Turning to the irreparable harm factor that Plaintiffs need to satisfy in order to obtain a preliminary injunction, the Court notes that our Court of Appeals has recognized that in certain situations, "a party seeking an asset freeze to preserve a money judgment may show irreparable injury by showing that the freeze is necessary to prevent the consumption, dissipation or fraudulent conveyance of the assets that the party pursuing the asset freeze seeks to recover in the underlying litigation." *Elliott v. Kiesewetter,* 98 F.3d 47, 58 (3d Cir.1996) (citing *Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 197 (3d Cir.1990)). This type of injunction is not, however, appropriate in "run-of-the-mill damages actions." *Hoxworth,* 903 F.2d at 197. To obtain such relief, the plaintiff must show not only that it is likely to become entitled to the encumbered funds upon final judgment, but also that without the preliminary injunction, the plaintiff will probably be unable to recover those funds. *Id.*

Plaintiffs have shown that they are likely to become entitled to the encumbered funds upon final judgment and that without the preliminary injunction, Plaintiffs wii be unable to recover the funds they paid to Defendants. In his unrefuted affidavit, Bryant averred that Gorbach and Maydanskyy stated during a meeting with Plaintiffs that the

money GridKor had paid them "is completely gone." He averred that Gorbach and Maydanskyy specifically told him that "$950,000 of the funds were taken by Mr. Jacobs and that they had taken $800,000 for themselves." Bryant further averred that while Gorbach and Maydanskyy did not give "a full accounting of the rest of the funds," they stated they had used the money to "buy trucks, repair trucks, and buy out investors or partners in other businesses." [ECF 6-1.]

Defendants have not submitted **any** evidence to refute these averments other than the unsubstantiated arguments made by Attorney Ralston in the motion for reconsideration. Based on these unrefuted allegations of the Bryant Affidavit and the actions alleged by Plaintiffs in their Verified Complaint, the Court verifies Judge Smith's finding that in the absence of a preliminary injunction, Plaintiff will be unable to recover these funds.

As for the balancing of equities factor, the Court notes that Judge Smith tailored his preliminary injunction by enjoining Defendants from transferring, assigning, conveying, encumbering, pledging, or otherwise disposing of any interest in real, personal, or intangible property **outside the ordinary course of business or ordinary uses to pay household expenses** until $4,941,037.18 is placed in escrow with the court." (emphasis added.) He also declined Plaintiffs' request that Defendants provide "bi-monthly accounting of expenses paid in the ordinary course of business or ordinary use to pay household expenses."  [ECF 11, p.3 n.1.] The Court finds that the risk of Defendants dissipating the entire amount of funds Plaintiffs invested with them outweighs the risk of any economic harm to Defendants.

Finally, although the transactions at issue were between private parties, there is still a public interest in preventing unjust enrichment and fraud and in preserving funds from which Defendants can satisfy a potential judgment for such actions.

In his Brief in Opposition to Plaintiffs' Motion to Show Cause seeking to hold them in contempt for violations of the September 18, 2023, preliminary injunction order, Attorney Bukowski raises the argument that the September 18, 2023, preliminary injunction should be dissolved because this Court lacks the equitable power to enjoin prejudgment transfers of assets. [ECF 94.]

"Generally, a federal court has no authority to freeze a defendant's funds to help ensure satisfaction of a judgment should the plaintiff prevail on an underlying legal claim." *Symphony FS Ltd. v. Thompson,* No. 5:18-CV-3904, 2018 WL 6715894, at *8 (E.D. Pa. Dec. 20, 2018) *(citing Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999))**.** "A plaintiff may obtain a prejudgment freeze on a defendant's assets only if he satisfies three conditions: (1) he asserts a cognizable equitable claim, (2) he demonstrates a sufficient nexus between that equitable claim and specific assets of the defendant which are the target of the injunctive relief, and (3) he shows that the requested interim relief is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." *Id.,* (quoting *F.T. Int'l, Ltd.,* 2000 WL 1514881, at *1 (E.D. Pa. Oct. 11, 2000)).

Here, as discussed, *supra*, Plaintiffs have asserted a cognizable equitable claim for unjust enrichment. Plaintiffs have also demonstrated a nexus between their claim for unjust enrichment and the sum of $4,941,037.18 which is the target of the injunctive relief. Finally, Plaintiffs have shown that the freezing of Defendants' assets with the

exception of those needed for the Defendants' ordinary course of business or for ordinary uses to pay household expenses is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed. Plaintiffs have satisfied the three conditions to obtain a prejudgment freeze of Defendant's assets.

Attorney Bukowski also argues that the preliminary injunction order is unenforceable because "it was issued *ex parte*, without the requisite showing, and fails to comply with the requirements of Fed. R. Civ. P. 52(a)(2) and 65(d). Defendant Mitic had not yet been served with the summons and complaint on September 18, 2023 (doc. 15), and none of the Responding Defendants had counsel." (ECF 94 at p. 3.) The Court has already addressed these concerns, *infra*. Suffice it to say, that the record reveals that Judge Smith took meticulous care to ensure that all of the Defendants had received notice of the lawsuit (three of the Defendants were personally served by defense counsel and the remaining Defendants received notice through repeated emails from defense counsel and by Plaintiff GridKor's Vice-President), motion for a preliminary injunction and the Court's September 18, 2023 conference call at 9:30 a.m. before issuing the preliminary injunction. Judge Smith believed it was urgent that he take immediate action to prevent the dissipation of funds and this Court supports that finding. Despite having received sufficient notice of the September 18, 2023 conference call, none of the Defendants chose to participate in that call to assert any type of rebuttal to Plaintiffs' allegations. Indeed, **even to date**, Defendants have never asserted any type of rebuttal to Plaintiffs' allegations.

Attorney Bukowski also criticizes the preliminary injunction order because it does not define "ordinary course of business." Judge Smith's Order clearly prohibited

17

Defendants from "transferring …, conveying, … or otherwise disposing of an[ ] interest in real, personal, or intangible property outside the ordinary course of business or ordinary uses to pay household expenses." (Doc. 11 ¶ 2.) However, this is standard language used by other courts in entering similar injunctions. See, e.g., *Allstate Ins. Co. v. Davidson Medical Group*, No. Civ. A. 01-5938, 2004 WL 2357797, at *5 (E.D. Pa. Oct. 18, 2004) ("[defendant] is hereby enjoined (either directly or through any other persons, trustees, nominees, or assigns) from concealing, dissipating, converting, conveying, selling, transferring, gifting, destroying, disposing, assigning, encumbering or secreting his assets, outside of ordinary living expenses, up to the sum of $1,800,000.00").

Finally, Attorney Bukowski argues that the bond amount of $25,000 is "too low" given the broad scope of relief set forth in the preliminary injunction order and that the amount should be increased to $500,000. Defendants cite no legal authority or evidentiary basis for requesting such an amount. Indeed, the bond set by Judge Smith was typical of, if not more demanding than, the bond amounts required in other cases involving injunctions against the dissipation of assets. *See, e.g.*, *Covertech Fabricating, Inc. v. TVM Building Prods., Inc*., No. 3:17-cv-196, 2017 WL 4863208, at *2, 5 (W.D. Pa. Oct. 26, 2017) (bond of $100 required of plaintiff on claim of $5.4 million); *F.T. Int' Ltd.I,* 2000 WL 1514881, at *3 (bond of $20,000 required on claim of $2.5 million).

For the foregoing reasons, the Defendants' motion for reconsideration of Judge Smith's September 18, 2023 Preliminary Injunction is denied.